**LEILA W. MORGAN**
California State Bar No. 232874
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467/Fax: (619) 687-2666
E-Mail: leila_morgan@fd.org

Attorneys for Ms. Salazar-Sandoval

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARILYN L. HUFF)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 08cr0285-H |
| Plaintiff, | DATE: March 17, 2008<br>TIME: 2:00 P.M. |
| v. | |
| ESMERALDA SALAZAR-SANDOVAL, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |
| Defendant. | |

I.

**STATEMENT OF FACTS**[1]

On January 21, 2008, Ms. Salazar-Sandoval drove a Chevrolet Blazer to the Calexico West Port of Entry. Ms. Salazar-Sandoval arrived at the primary inspection booth at approximately 1:40 p.m., she was the only person in the car. Primary Inspector, Officer Weir, received a negative customs declaration from Ms. Salazar-Sandoval. He then questioned Ms. Salazar-Sandoval regarding her ownership of the vehicle, Ms. Salazar-Sandoval stated that she owned the vehicle. He then referred her to secondary inspection, after he determined that the vehicle was too clean. While at secondary inspection, Officer Barela used his Human/Narcotics Detector Dog on the vehicle, and the dog alerted to the passenger side quarter panel.

---

[1] The following is based primarily on information provided by the government. Ms. Salazar-Sandoval does not stipulate to the accuracy of these facts and reserves the right to contest these facts at any future proceeding.

1  Officer Galaviz was informed of the alert and took control of the vehicle. Officer Galaviz then asked Ms.
2  Salazar-Sandoval again whether she owned the vehicle, she stated that she did and that she was on her way
3  to Wal-Mart in Calexico.

4  A intensive inspection was done on the vehicle and a total of 46 packages containing a green leafy
5  substance were found in the spare tire, tailgate, quarter panels and both the driver and passenger side doors.
6  The substance field tested positive for marijuana. Ms. Salazar-Sandoval was subsequently arrested. At
7  approximately 4:30 p.m. Ms. Salazar-Sandoval was interviewed by Agents Torregrosa and Silva. Ms.
8  Salazar-Sandoval provided biographical information and then invoked her right to remain silent.

9  On February 5, 2008, an indictment was filed charging Ms. Salazar-Sandoval with importation of
10 marijuana and possession of marijuana with intent to distribute.

11 These motions follow.

## II.

### MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

14 As of the filing of these motions, the Government has provided Ms. Salazar-Sandoval with limited
15 discovery.

16 Ms. Salazar-Sandoval moves for the production by the government of the following discovery and
17 for the preservation of evidence. This request is not limited to those items that the prosecutor knows of, but
18 rather includes all discovery listed below that is in the custody, control, care, or knowledge of any
19 government agency. *See generally Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bryan*, 868 F.2d
20 1032 (9th Cir. 1989).

21 (1) <u>The Defendant's Statements</u>. The Government must disclose to the defendant <u>all</u> copies of any
22 written or recorded statements made by the defendant; the substance of any statements made by the
23 defendant which the Government intends to offer in evidence at trial; any response by the defendant to
24 interrogation; the substance of any oral statements which the Government intends to introduce at trial and
25 any written summaries of the defendant's oral statements contained in the handwritten notes of the
26 Government agent; any response to any *Miranda* warnings which may have been given to the defendant; as
27 well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee
28 Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's

statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) <u>Arrest Reports, Notes and Dispatch Tapes</u>.  The defense also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced <u>in their entirety</u>, be turned over to him.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963).  *See also Loux v. United States*, 389 F.2d 911 (9th Cir. 1968).  Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(i).  Preservation of rough notes is requested, whether or not the government deems them discoverable.

(3) <u>*Brady* Material</u>.  Ms. Salazar-Sandoval requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Impeachment as well as exculpatory evidence falls within <u>Brady's</u> definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

(4) <u>Any Information That May result in a Lower Sentence Under The Guidelines</u>.  As discussed above, this information is discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963).  This request includes any cooperation or attempted cooperation by the defendant, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines.  Also included in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, or any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>.  Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B).  Counsel specifically requests a complete copy of any criminal record.

(6) <u>Any Proposed 404(b) Evidence</u>.  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the

1  general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.
2  Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact
3  of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822,
4  830 (9th Cir. 1982) (emphasis added; internal citations omitted); *see also United States v. Brooke*, 4 F.3d
5  1480, 1483 (9th Cir. 1993) (reaffirming *Mehrmanesh* and reversing convictions).

6  This includes any "TECS" records (records of prior border crossings) that the government intends
7  to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. Although there is nothing
8  intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other
9  acts" evidence that the government must produce before trial. *United States v. Vega*, 188 F.3d 1150, 1154-
10 1155 (9th Cir. 1999).

11 The defendant requests that such notice be given **three weeks** before trial in order to give the defense
12 time to adequately investigate and prepare for trial.

13 (7) <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant,
14 is discoverable under Fed. R. Crim. P. 16(a)(1)(C).

15 (8) <u>Request for Preservation of Evidence</u>. The defense specifically requests that all dispatch tapes
16 or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,
17 or care of the government and which relate to the arrest or the events leading to the arrest in this case be
18 preserved. This request includes, but is not limited to, <u>the narcotics seized</u>, the results of any fingerprint
19 analysis, the defendant's personal effects, the vehicle, and any other evidence seized from the defendant or
20 any third party. It is requested that the government be ordered to <u>question</u> all the agencies and individuals
21 involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does
22 exist to inform those parties to preserve any such evidence.

23 (9) <u>Tangible Objects</u>. The defense requests, under Fed. R. Crim. P. 16(a)(1)(C) the opportunity to
24 inspect and copy as well as test, if necessary, all other documents and tangible objects, including
25 photographs, books, papers, documents, photographs of buildings or places or copies of portions thereof
26 which are material to the defense or intended for use in the government's case-in-chief or were obtained from
27 or belong to the defendant.

28 //

1       (10) <u>Evidence of Bias or Motive to Lie</u>. The defense requests any evidence that any prospective
2 government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or
3 her testimony. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th
4 Cir. 1988).

5       (11) <u>Impeachment evidence</u>. Ms. Salazar-Sancoval requests any evidence that any prospective
6 government witness has engaged in any criminal act whether or not resulting in a conviction and whether
7 any witness has made a statement favorable to the defendant. <u>See</u> Fed. R. Evid. 608, 609 and 613. Such
8 evidence is discoverable under <u>Brady v. Maryland</u>, supra. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th
9 Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that
10 detracts from a witness' credibility).

11      (12) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defense requests any
12 evidence that any prospective witness is under investigation by federal, state or local authorities for any
13 criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

14      (13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>. Ms. Salazar-Sandoval
15 requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any
16 prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any
17 evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.
18 *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *Chavis v. North Carolina*, 637 F.2d 213, 224 (4th
19 Cir. 1980).

20      (14) <u>Witness Addresses</u>. The defense requests the name and last known address of each prospective
21 government witness. *See United States v. Napue*, 834 F.2d 1311 (7th Cir. 1987); *United States v. Tucker*,
22 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); *United
23 States v. Cook*, 608 F.2d 1175, 1181 (9th Cir. 1979)) (defense has equal right to talk to witnesses). The
24 defendant also requests the name and last known address of every witness to the crime or crimes charged
25 (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness.
26 *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984).

27      (15) <u>Name of Witnesses Favorable to the Defendant</u>. Ms. Salazar-Sandoval requests the name of
28 any witness who made any arguably favorable statement concerning the defendant or who could not identify

him or who was unsure of his identity, or participation in the crime charged. *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968); *Chavis v. North Carolina*, 637 F.2d 213, 223 (4th Cir. 1980); *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir.), *cert. denied*, 439 U.S. 883 (1978); *Hudson v. Blackburn*, 601 F.2d 785 (5th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980).

(16) Statements Relevant to the Defense. Ms. Salazar-Sandoval requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert. *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982). This would include Grand Jury transcripts which are relevant to the defense motion to dismiss the indictment.

(17) *Jencks* Act Material. The defense requests all material to which Ms. Salazar-Sandoval is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963).

(18) *Giglio* Information. Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(19) Reports of Scientific Tests or Examinations. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), the defendant requests the results and/or reports of all tests, examinations, or experiments conducted upon the evidence in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense *or* are intended for use by the government as evidence in chief at the trial. Including, but not limited to, any fingerprint testing done upon any evidence seized in this case, and any tests or experiments conducted on the compartment in this case.

(20) *Henthorn* Material. The defense requests that the prosecutor review the personnel files of the officers involved in her arrest, and those who will testify, and produce to her any exculpatory information at least two weeks prior to trial and one week prior to the motion hearing. *See United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). In addition, she requests that if the government is uncertain whether certain

information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an <u>in camera</u> inspection.

(21) <u>Informants and Cooperating Witnesses</u>. Ms. Salazar-Sandoval requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. *Rovario v. United States*, 353 U.S. 53, 61-62 (1957). Ms. Salazar-Sandoval also requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio v. United States*, 405 U.S. 150 (1972). Such information would include inducements, favors, payments, or threats made to the witness to secure cooperation with the authorities.

(22) <u>Expert Witnesses</u>. The defendant requests disclosure of any expert witnesses the government intends to call at trial and "a written summary of testimony that the government intends to use," including the "witnesses' opinions, the bases and the reasons for those opinions" and his or her qualifications. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). *See United States v. Duvall*, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Spanish or any other foreign language that may have been used during the course of an interview with Ms. Salazar-Sandoval or any other witness.

Ms. Salazar-Sandoval requests the notice of expert testimony be provided at a minimum of *three weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. *See Kumho v. Carmichael Tire Co.*, 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

//

1   (23) <u>Narcotics Detector Dog Information.</u> Defendant moves for production of all discoverable information about any Narcotics Detector Dogs (NDDs) used in this case, including information regarding: (a) the qualifications of the NDDs and their handlers, (b) the training and experience of the NDDs and their handlers, (c) the government's procedures regarding the treatment, training and rewarding of the NDDs, (d) a detailed description of the exact method the NDDs in this case used to indicate an "alert" to contraband, and (e) the location of the NDD and the vehicle when the NDD alerted, and (f) the NDD's reliability.

(24) <u>Training of Relevant Law Enforcement Officers</u>. Defendant requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Defendant also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover narcotics in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

(25) <u>Performance Goals and Policy Awards</u>. Defendant requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics in general.

(26) <u>Opportunity to Weigh, View and Photograph the Contraband</u>. Defendant hereby requests an opportunity to view, photograph, and weigh the contraband allegedly confiscated in this case.

(27) <u>DEA 7 Form</u>. Defendant requests a copy of the DEA 7 form which should indicate the alleged weight and purity of the contraband in this case.

(28) <u>TECS Reports</u>. Defendant requests all TECS reports, including reports pertaining to all vehicle border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Defendant, as well as an explanation of TECS provided.

(29) <u>Residual Request</u>. The defense intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Ms. Salazar-Sandoval requests that the government provide her and her attorney with the above requested material sufficiently in advance of trial.

### III.

### MOTION TO PRESERVE AND RE-WEIGH NARCOTIC EVIDENCE

Ms. Salazar-Sandoval requests an order for the U.S. Government and its agents to preserve the narcotic evidence in this case and permit the defense to re-weigh any narcotic evidence. For the Court's convenience, a proposed order will be emailed to chambers.

### IV.

### REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

To date, Ms. Salazar-Sandoval and defense counsel have received limited discovery from the government. It is anticipated that as new information comes to light, the defense will likely find it necessary to file further motions. Ms. Salazar-Sandoval requests a further opportunity to file further motions based upon information gained through the discovery process.

### V.

### CONCLUSION

For the reasons stated above, Ms. Salazar-Sandoval moves this Court to grant his motions.

Respectfully submitted,

Dated: March 11, 2008
   /s/ Leila W. Morgan
**LEILA W. MORGAN**
Attorney for Ms. Salazar-Sandoval
leila_morgan@fd.org