KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-4716
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08cr0285-H |
| Plaintiff, | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. | |
| | **(1) TO COMPEL DISCOVERY** |
| | **(2) TO PRESERVE AND RE-WEIGH NARCOTICS** |
| ESMERALDA SALAZAR-SEPULVEDA, | **(3) TO FILE FURTHER MOTIONS** |
| Defendant. | Date: March 17, 2008<br>Time: 2:00 p.m.<br>Court: The Hon. Marilyn L. Huff |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery, Preserve and Re-Weigh Narcotics, and File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

//

//

//

I

**STATEMENT OF FACTS**

On January 21, 2008, at approximately 1:39 p.m., Esmeralda Salazar-Sandoval ("Defendant") drove a 1898 Chevrolet Blazer to the Calexico West Port of Entry. Defendant applied for entry into the United States and told Customs and Border Protection Officer Weir that she had nothing to declare. She stated she had owned the vehicle for over a year and a half. CBP Officer Weir noticed that the vehicle appeared to be too clean and referred her to the secondary inspection lot.

In the vehicle secondary lot, a narcotics detection dog alerged to the passenger side quarter panel. Defendant told CBP Officer Galaviz that she was the owner of the vehicle and was driving to the Wal-Mart in Calexico. CBP Officer Galaviz inspected the vehicle and found a total of 46 packages of marijuana contained in the quarter panels, spare tire, tailgate, and both the driver and passenger side doors. The total weight of the marijuana was 46.34 kilograms (101.94 pounds).

II

**DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

The Government produced and Defendant picked up 65 pages of discovery on February 25, 2008, including the reports from the Customs and Border Protection Officers and Immigration and Customs Enforcement Agent, an inventory of Defendant's property, copies of the documents found in her possession and in the vehicle, and photographs of the vehicle and the narcotics.

**(1)    Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

**(2)    Arrest Reports, Notes, and Dispatch Tapes**

The Government will provide Defendant with all known reports related to Defendant's arrest in this case. The Government is not aware at this time of the existence of any dispatch tapes relevant

to this case. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A). The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(3)     Brady Material**

The Government will perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam). Under Brady, the United

States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001). Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(4)     Information That May Result in a Lower Sentence Under the Guidelines**

The Government will provide Defendant with all Brady material that may result in mitigation of Defendant's sentence. Nevertheless, the Government is not required to provide information bearing on Defendant's sentence until after Defendant's conviction or guilty plea and prior to her sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation occurs "if the evidence is disclosed to the defendant at a time when the disclosure remains in value").

**(5)     Defendant's Prior Record**

As far as the Government is aware at this time, Defendant does not have a prior record. The Government will provide Defendant with documentation indicating this lack of a prior criminal record and thereby fulfill its duty of discovery under Rule 16(a)(1)(D).[1] See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

**(6)     Any Proposed 404(b) Evidence**

The Government will disclose in advance of trial the general nature of any "other bad acts" or

---

[1] Defendant requests evidence of his prior record pursuant to Rule 16(a)(1)(B). The Government interprets this as a request pursuant to Rule 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior record.

"other acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(7)     Evidence Seized**

The Government has prepared and will produce copies of documents seized at the time of Defendant's arrest. The Government will continue to comply with Rule 16(a)(1)(E)[2/] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**(8)     Request for Preservation of Evidence**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government has made every effort to preserve evidence it deems to be relevant and material to this case, including sending a letter to the agency in charge on January 16, 2008, requesting the specific preservation of evidence. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

//

---

[2/]     Defendant requests this discovery pursuant to Rule 16(a)(1)(C). Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E).

**(9)    Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[3/] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(10)    Evidence of Bias or Motive to Lie**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(11)    Impeachment Evidence**

As discussed elsewhere, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses.

**(12)    Evidence of Criminal Investigation of Any Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(13)    Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

---

[3/]    Defendant makes this request under Fed. R. Crim. P. 16(a)(2)(C). Because there is no such subsection in Rule 16, the Government interprets this as a request under Rule 16(a)(1)(E) which applies to the discovery of documents and objects.

The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

**(14)   Witness Addresses**

The Government has provided Defendant with the reports containing the names, work addresses, and telephone numbers of the inspectors, officers and special agents who asked questions of Defendant and found the marijuana in the vehicle. In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant. In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial. <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992); (citing <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996); <u>see also</u> <u>United States v. Bejasa</u>, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(15)   Name of Witnesses Favorable to the Defendant**

The Government is not aware of the names of any witnesses favorable to the Defendant's case. If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(16)   Statements Relevant to the Defense**

The Government will provide all statements relevant to Defendant as required by Rule 16, <u>Brady</u>, and <u>Jencks</u>. The Government is not all possible information and evidence regarding any

speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(17)   Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e).  If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  There is no applicable Jencks material at this time.  If the case proceeds to trial, the Government will produce any materials covered by the Jencks Act relevant to the testifying witness(es).

**(18)   Giglio Information**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002).   The Government is not aware of any Giglio information related to this case.  If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(19)   Report of Scientific Tests or Examinations**

At this time, the only scientific test that the Government is aware of is an analysis of the marijuana by the DEA laboratory. The Government has not yet received the results of that analysis, but will provide Defendant with the results of any scientific tests or examinations in accordance with Rule

1  16(a)(1)(F) when those tests results are received.

**(20) Henthorn Material**

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**(21) Informants and Cooperating Witnesses**

At this time, the United States is unaware of any informants or cooperating witnesses related to this case. If the United States determines that there is a confidential informant whose identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose that person's identity to the Court for in-chambers inspection. See Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997).

**(22) Expert Witness**

The Government will provide notice prior to trial of any expert witnesses that will be called to testify at trial.

**(23) Narcotics Detector Doc Information**

The Government objects to this request because the requested information is not relevant at this time. Defendant has not raised an issue regarding the accuracy or effectiveness of the performance of the narcotics detector dog in this case. If the Court believes that such an issue is relevant, the Government will endeavor to provide the appropriate information at that time.

(24) **Training of Relevant Law Enforcement Agencies**

The United States objects to any request for discovery of policies, instructions and training manuals regarding the interrogation of subjects or handling of evidence.

//

(25) **Performance Goals and Policy Awards**

The United States objects to any request for disclosure of performance goals and policy awards with respect to the detection of criminal activity.

(26) **Opportunity to Weigh , Count, View and Photograph Contraband**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The United States need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(27) DEA-7 Form**

The United States has not at this time received a completed DEA-7 analysis from the laboratory. When such analysis is complete, the United States will produce it to Defendant.

**(28) TECS Reports**

If the United States intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

### III

### MOTION TO PRESERVE AND RE-WEIGH NARCOTIC EVIDENCE

The undersigned AUSA sent a letter on February 20, 2008, to the Acting Special Agent in Charge, U.S. Department of Homeland Security, requesting that the narcotics and vehicle be preserved until the conclusion of the case.  The United States will continue to endeavor to preserve the physical evidence in order to comply with any future court orders.

### IV

### DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue.

**IV**

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A.     All Evidence That Defendant Intends To Introduce In Her Case-In-Chief**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in her case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which she intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B.     Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

//

//

//

//

## VI
## CONCLUSION

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: March 11, 2008.

                Respectfully submitted,

                KAREN P. HEWITT
                United States Attorney

                /s/*Rebecca Kanter*
                REBECCA S. KANTER
                Assistant United States Attorney
                Attorneys for Plaintiff
                United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0285-H |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| ESMERALDA SALAZAR-SANDOVAL, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

　　I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

　　I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

　　Leila Morgan

　　I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

　　None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

　　I declare under penalty of perjury that the foregoing is true and correct.

　　Executed on March 11, 2008.

　　　　　　　　　　　　　　　　　　　　　/s/ ***Rebecca Kanter***
　　　　　　　　　　　　　　　　　　　　　REBECCA S. KANTER