1  **LEILA W. MORGAN**
   California Bar No. 232874
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone: (619) 234-8467
4

5  Attorneys for Ms. Salazar-Sandoval

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10                          **(HONORABLE MARILYN L. HUFF)**

11 | UNITED STATES OF AMERICA,              )    CASE NO. 08CR0285-MLH
                                            )
12 |         Plaintiff,                     )    DATE: April 7, 2008
                                            )    TIME:  9:00 A.M.
13 | v.                                     )
                                            )    MEMORANDUM OF POINTS AND
14 | ESMERALDA SALAZAR-SANDOVAL,            )    AUTHORITIES IN SUPPORT OF
                                            )    DEFENDANT'S MOTIONS IN LIMINE
15 |         Defendant.                     )    AND OTHER TRIAL MOTIONS
                                            )
16 |_____ )

17                                       **I.**

18                              **STATEMENT OF FACTS**

19  Ms. Salazar-Sandoval hereby incorporates her previously submitted statement of facts in this case.

20                                       **II.**

21                                    **MOTIONS**

22  **A.    Any Proposed Expert Testimony Addressing the Street Value of Marijuana Must Be Excluded.**

23        **1.    Any Testimony Asserting that Ms. Salazar-Sandoval Must Have Possessed Knowledge
                  of the Marijuana in the Vehicle Because of its Supposed Street Value Violates FRE 704
24                and Must be Excluded.**

25  FRE 704 provides:

26  No expert witness testifying with respect to the mental state or condition of a defendant in a
    criminal case may state an opinion or inference as to whether the defendant did or did not have
27  the mental state or condition constituting an element of the crime charged or of a defense
    thereto. Such ultimate issues are matters for the trier of fact alone.

28

Ninth Circuit case law does not limit this rule to psychiatric witnesses; rather, it applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See <u>United States v. Morales</u>, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); <u>United States v. Webb</u>, 115 F.3d 722 (9th Cir. 1997) (holding it impermissible under FRE 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.).

Any proposed expert who would opine -- directly or indirectly -- that Ms. Salazar-Sandoval must have known that her vehicle contained marijuana testifies as to her mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to bolster speculation on Ms. Salazar-Sandoval's alleged knowledge. This testimony is expressly forbidden by FRE 704 and by Ninth Circuit law. Accordingly, an order in limine must be granted excluding this testimony.

**2.     Rule 403 Prohibits Street Value Testimony in Any Event.**

Even assuming that this testimony were otherwise admissible, Rule 403 prohibits expert testimony on the street value of marijuana at trial. According to the government's argument, this testimony is relevant because drug trafficking organizations would not entrust this "valuable commodity" to an unknowing person. This reasoning rests on rank speculation as to the mental processes of unknown persons. The government cannot simply proffer evidence on what these vague and unknown "drug traffickers" would or would not do in a given situation. There is virtually no probative value in this proposed testimony.

In contrast, this testimony will result in substantial prejudice to Ms. Salazar-Sandoval. The sheer monetary value of this marijuana could inflame the passions of the jury, and distract them from Ms. Salazar-Sandoval's lack of knowledge -- the true issue in this case. The amount of money at stake could well suggest that a vast drug empire is implicated here; indeed, this inference is a key premise in the government's relevance argument. This insinuation, however, has no evidentiary support and is not relevant. Beyond the government's attenuated and factually unsupported argument that the value of these drugs demonstrates the defendant's knowledge, absolutely no probative value exists in this testimony. The prejudice, in contrast, is extreme. This testimony should therefore be independently excluded under FRE 403.

//

//

### 3. If Necessary, Ms. Salazar-Sandoval Will Stipulate that This Marijuana is a Distributable Amount.

If the government argues that the value of the marijuana is relevant to establish that it was a distributable amount, Ms. Salazar-Sandoval is prepared to stipulate under Old Chief v. United States, 117 S. Ct. 644 (1997), that the amount involved here is a distributable amount to avoid the inevitable prejudicial impact of this evidence.

### B. This Court Should Exclude Any Expert Testimony Describing the Structure of Supposed Drug Smuggling Organizations, as it Is Irrelevant, Improper under FRE 702 and 703, and Unduly Prejudicial under FRE 403.

Under this Circuit's precedent United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), and United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001), structure testimony may not be permitted in this trial. This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally irrelevant and an abuse of discretion under FRE 401. Vallejo 237 F.3d at 1017. The same problem exists with any organizational structure evidence in this case. The government has not charged Ms. Salazar-Sandoval with conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the instant offense. Any attempt, then, to connect Ms. Salazar-Sandoval to a vast drug empire that has not been alleged and has not been proven violates FRE 401, 403, and Ninth Circuit case law. A motion in limine excluding such evidence should be granted accordingly.

### C. Evidence of Alleged "Nervous" Behavior Is Inherently Unreliable, Misleading, and Inadmissible under FRE 403, 702, and 703.

It is anticipated that the government will call witnesses at trial to assert that Ms. Salazar-Sandoval appeared "nervous" at the checkpoint, and that this evidence somehow bears on whether he knew marijuana was concealed in the vehicle he was driving. This testimony is bereft of probative value, is overly prejudicial, and should be excluded pursuant to Federal Rule of Evidence 403. Moreover, there is no proper foundation for such lay witness opinion testimony pursuant to Federal Rule of Evidence 701. It should be excluded as a result.

//
//
//

1. **Testimony That Ms. Salazar-Sandoval Appeared "Nervous", If Used to Suggest Knowledge, Is Substantially More Prejudicial Than Probative Under FRE 403 and Should be Excluded.**

Federal Rule of Evidence 403 requires the Court to exclude proposed evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." This is such a case.

When a lay witness has had no background contact with a person, speculation as to whether they appeared nervous has minimal, if any, probative value. See United States v. Wald, 216 F.3d 1222, 1227 (10th Cir.2000) (en banc) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir.1994) ("We have repeatedly held that nervousness is of limited significance . . . and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see also Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" error because -- "we have long been skeptical of such lay testimony"); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970)(lay testimony as to mental state lacks probative value when a witness's "direct knowledge of the defendant is brief and superficial.").

Vague allusions to "nervousness" reveal little meaningful evidence in a criminal trial because, as courts nationwide recognize, people confronted with law enforcement often exhibit these signs without having done anything wrong. See Untied States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001) ("[N]ervousness during a traffic stop–even . . . extreme nervousness . . . in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity . . . ."); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement); United States v. Wood, 106 F.3d 942, 947 (10th Cir. 1997) ("[i]t is certainly not uncommon for most citizens--whether innocent or guilty--to exhibit signs of nervousness when confronted by law enforcement officer."); Fernandez, 18 F.3d at 879 (same); United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992) (same); United States v. Grant, 920 F.2d 376, 386 (6th Cir. 1990)

//

("[n]ervousness is entirely consistent with innocent behavior"); <u>United States v. Andrews</u>, 600 F.2d 563, 566, n.4 (6th Cir. 1979) (noting inconsistent rationales taken by government in explaining nervousness).

Thus, courts across the country recognize that alleged "nervousness" can stem from any number of sources, and can be easily misinterpreted by persons not familiar with a given defendant. Because the government is trying to infer guilt from the nervousness at issue here, and because the border agents who witnessed Ms. Salazar-Sandoval had never met her before, this testimony carries little probative weight.

In contrast, substantial potential for prejudice exists. Upon hearing from a law enforcement agents that Ms. Salazar-Sandoval was "nervous," the jury will be inclined to assume his guilt instead of an equally plausible innocent explanation. Indeed, this logical leap is the precise reason that the government continually seeks to introduce such testimony. All told, any proposed testimony that Ms. Salazar-Sandoval displayed signs of nervousness is irrelevant to the issue at hand and should be excluded under Federal Rule of Evidence 403 as being substantially more prejudicial than probative.

**2. Admission of Nervousness Testimony Violates FRE 701.**

Finally, such evidence should be excluded if it is couched in terms of an agent's personal opinion about Ms. Salazar-Sandoval's mental state -- i.e., "he was nervous." The agent's personal opinion as to Ms. Salazar-Sandoval's mental state is irrelevant; this conjecture also rests on no prior knowledge of the defendant and upon a very limited observation. As such, it violates Rule 701. In <u>Gonzalez-Rivera v. INS</u>, 22 F.3d 1441 (9th Cir. 1994), this Circuit held that an INS agent's testimony at a suppression hearing that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence." <u>Id.</u> at 1447. There, when explored, the basis for the agent's testimony was that the individual appeared to have a "dry mouth." The court stated that absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do[] not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." <u>Id.</u> Likewise the testimony in the instant case that Ms. Salazar-Sandoval, is "nervous" is nothing more than a subjective judgment based upon no prior knowledge of an individual and, similarly, should not be considered by the jury. In any event, under no circumstances should the government witness' be allowed to opine that Ms. Salazar-Sandoval knew that drugs were concealed in the vehicle she was driving. This
//

testimony would directly violate FRE 701, and amounts to nothing but speculation. Accordingly, this motion in limine should be granted .

**D.    The Presence of Marijuana in the Courtroom Is Highly Prejudicial, Minimally Probative at Best, and Thus Properly Excluded under FRE 403.**

At trial, the government may attempt presenting the actual bags of marijuana seized to the jury. In this particular case, in which Ms. Salazar-Sandoval's knowledge of the drugs is the only contested issue, this evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute. It must be excluded under FRE 403.

FRE 403 asserts that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Presentation of the marijuana seized in this case to the jury runs afoul of this evidentiary rule.

Because the presence of the marijuana seized is undisputed in this case, there is simply no reason to bring this physical evidence into the courtroom. This lack of probative value, however, stands in contrast to the highly prejudicial nature of this contraband. Many jurors will no doubt be scandalized by the sheer volume of drugs involved in this case. In sum, this evidence proves no issue that is in dispute, yet threatens to badly prejudice Ms. Salazar-Sandoval. For these reasons, Ms. Salazar-Sandoval respectfully requests that this evidence be excluded from trial.

**E.    The Court Should Not Send the Indictment into the Jury Room During Deliberations.**

In the commentary to Model instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the Indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.

Ms. Salazar-Sandoval urges this Court to follow the Committee's guidance. The language in the instant Indictment intentionally mirrors the language of the charged statutes. Accordingly, jurors could be improperly persuaded by the similarities between the Indictment allegations and the elements of the crime.

//

1 Because the Indictment is not evidence, but could potentially be mistaken for such, this document should not
2 be permitted into the jury room during deliberations.[1]

### F. The Court Should Preclude the Government from Introducing Evidence under Federal Rule of Evidence 404(b) and/or 609.

Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. FRE 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Ms. Salazar-Sandoval timely requested notice of proposed 404(b) evidence in his motion to compel discovery, received on November 1, 2007. Ms. Salazar-Sandoval specifically requested the Government to provide notice of such evidence at least three (3) weeks prior to trial. Id. To date, the government has not provided any notice of specific evidence that it might seek to introduce under this rule. As a result, Ms. Salazar-Sandoval requests that this court preclude introduction of any evidence of other crimes, wrongs, or acts under Rule 404(b).

If the government provides tardy notice of the intent to use an offense under FRE 404(b) or impeachment evidence under 609, Ms. Salazar-Sandoval requests the opportunity to address the government's use of the past act before trial.

### G. Introduction of "Mug Shots" of Ms. Salazar-Sandoval Are Highly Prejudicial Without Adding Any Probative Value to this Trial, Thus Meriting Exclusion under FRE 403.

Discovery documents provided in this case include some "mug shot"-style pictures of Ms. Salazar-Sandoval taken while he was in custody. These pictures have no place at this trial. This is not an identity case: Ms. Salazar-Sandoval does not dispute that he is the individual arrested at the checkpoint. Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically puts one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing while in trial. Under ER 403, these pictures are highly prejudicial and devoid of probative value. They should be excluded from trial as a result.

---

[1] Should the Court allow a copy of the indictment to be sent to the jury room, the Court should caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-52 (9th Cir. 1989).

H. **The Court Should Exclude Any Mention of Ms. Salazar-Sandoval's Financial Circumstances as a Motive for Committing this Offense.**

The defense anticipates that at trial the prosecution may attempt to elicit information regarding Ms. Salazar-Sandoval's financial circumstances, and/or may attempt to argue during closing argument that Ms. Salazar-Sandoval's financial circumstances provided a motive for her to participate in this offense.

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments upon poverty are forbidden. See United States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000). "Poverty comments" may not be made even when the evidence commented upon is admitted by the defense. Id. 1017, 1022 n.2. Romero-Avila specifically rejected the very argument that the defendant is barred from challenging comments upon improper poverty testimony because he elicited it during cross-examination and held that the government's comments were plain error. Therefore, this Court should issue an order precluding the prosecution (1) from introducing any evidence regarding Ms. Salazar-Sandoval's financial condition, and (2) commenting upon Ms. Salazar-Sandoval's financial condition during argument.

I. **The Court Should Preclude the Prosecution and its Witnesses from Impermissibly Vouching at Trial.**

Impermissible vouching must not be allowed during the government's case-in-chief, rebuttal or during the government's closing argument. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony" See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993). The Supreme Court has held:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; *and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.*

Berger v. United States, 295 U.S. 78, 88-89 (1935). Similarly, the Ninth Circuit has "consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury . . . ." United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005). As the Ninth Circuit has explained:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994), quoting United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir.1984).

It is also impermissible for government agents to vouch for themselves or each other. In United States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that vouching can occur through the testimony of a government agent because the jury might easily identify the agent's position with the integrity of the United States. In fact, the Court noted that when that happens, vouching occurs in a "very powerful form." Id. Ms. Salazar-Sandoval requests the Court prohibit such impermissible vouching in his trial to ensure its fairness.

**J.     Ms. Salazar-Sandoval's Counsel Should Have the Opportunity to Voir Dire the Jury.**

Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Ms. Salazar-Sandoval's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury. Ms. Salazar-Sandoval is not asking for hours of the Court's time; rather, she is requesting a discreet opportunity to inquire into important issues that commonly arise in such a case. She is fully prepared to submit all proposed questions in advance for the Court's review.

**K.     The Government Should Produce TECHS Evidence to Ms. Salazar-Sandoval.**

The Government has indicated that it is in possession of TECHs records that establish Ms. Salazar-Sandoval's crossings into the United States, as well as the crossings of the Chevrolet Blazer in which she was arrested. The government has further indicated that because they only intend to offer evidence of these crossings as rebuttal evidence, they are not required to turn them over. However, Ms. Salazar-Sandoval requests production of these records for their potential exculpatory value. Ms. Salazar-Sandoval believes that the crossing history of herself and her vehicle will corroborate the statements she made at primary and secondary inspection. She further believes they may corroborate her account of the events. Should the Court require it, Ms. Salazar-Sandoval is prepared to make and ex parte factual proffer concerning her specific version of events. Ms. Salazar-Sandoval requested these records prior to the last motion hearing, however,

at that time the Government was not yet in possession of the records. Ms. Salazar-Sandoval requests the Court order them turned over before trial.

## III.

## CONCLUSION

For the foregoing reasons, Ms. Salazar-Sandoval respectfully requests that this Court grant these motions in limine, as well as these other motions for trial.

Respectfully submitted,

Dated: March 28, 2008

/s/ Leila W. Morgan
**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Salazar-Sandoval