KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6747
Fax: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ESMERALDA SALAZAR-<br>    SANDOVAL,<br><br>    Defendant. | Criminal Case No. 08CR0285-H<br><br>**NOTICE OF GOVERNMENT'S MOTIONS AND MOTIONS *IN LIMINE* TO:**<br><br>(A) EXCLUDE ALL WITNESSES EXCEPT THE GOVERNMENT'S CASE AGENT;<br>(B) ADMIT DEMEANOR EVIDENCE;<br>(C) ADMIT EXPERT TESTIMONY;<br>(D) PRECLUDE EXPERT TESTIMONY BY THE DEFENDANT;<br>(E) ADMIT VEHICLE REGISTRATION<br>(F) ESTABLISH CHAIN OF CUSTODY<br>(G) PRECLUDE REFERENCE TO HEALTH, AGE, EDUCATION & POTENTIAL PUNISHMENT<br>(H) EXCLUDE EVIDENCE OF PRIOR GOOD ACTS<br>(I) EXCLUDE SELF-SERVING HEARSAY<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND RENEWED MOTION FOR RECIPROCAL DISCOVERY**<br><br>Date: April 7, 2008<br>Time: 2:00 p.m.<br>Court: The Hon. Marilyn L. Huff |

    COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Rebecca S. Kanter, Assistant United States Attorney, and hereby files its Motions *in Limine* and Renewed Motion for Reciprocal Discovery. These Motions are based upon the files and records of the case together with the attached Statement of Facts and Memorandum of Points and Authorities.

**I**

**STATEMENT OF THE CASE**

On February 5, 2008, a federal grand jury in the Southern District of California returned a two-count Indictment charging defendant Esmeralda Salazar-Sandoval ("Defendant") with (i) importing approximately 46.34 kilograms (101.94 pounds) of marijuana into the United States in violation of Title 21, United States Code, §§ 952 and 960; and (ii) possessing that marijuana with the intent to distribute it, in violation of Title 21, United States Code, § 841(a)(1). Defendant was arraigned on the Indictment on February 5, 2008, and pleaded not guilty.         On March 17, 2008, the Court granted Defendant's Motion to Preserve and Re-weigh the Narcotics. The Court set a hearing on the parties' motions *in limine* for April 7, 2008, and set trial for April 8, 2008.

**II**

**STATEMENT OF FACTS**

On January 21, 2008, at approximately 1:39 p.m., Esmeralda Salazar-Sandoval ("Defendant") drove a 1989 Chevrolet Blazer to the Calexico West Port of Entry. Defendant applied for entry into the United States and told Customs and Border Protection Officer Weir that she had nothing to declare. Defendant said she was going to Wal-Mart. She stated she had owned the vehicle for over a year and a half. She also stated that she and her husband worked at an auto repair shop. CBP Officer Weir noticed that the vehicle appeared to be too clean and referred her to the secondary inspection lot.

In the vehicle secondary lot, a narcotics detection dog alerted to the passenger side quarter panel. Defendant told CBP Officer Galaviz that she was the owner of the vehicle and was driving to the Wal-Mart in Calexico. CBP Officer Galaviz inspected the vehicle and found a total of 46 packages of marijuana contained in the quarter panels, spare tire, tailgate, and both the driver and passenger side doors. Newspaper was found in the compartments underneath and around the packages of marijuana. The total weight of the marijuana was 46.34 kilograms (101.94 pounds). After being advised of her Miranda rights, Defendant elected to invoke her rights and all questioning ceased.

In addition to the marijuana, Agents found the following items in the vehicle: a map of Hollywood and a Mexican registration document for the vehicle in the name of Esmeralda Salazar-Sandoval showing a registration date of August 8, 2007.

A forensic chemist employed by the Drug Enforcement Administration and assigned to the Southwest Regional Laboratory in this district conducted a series of evaluations on the seized drugs and concluded that the substance tested positive for marijuana.

### III

### **GOVERNMENT'S MOTIONS IN LIMINE**

**A.     The Court Should Exclude All Witnesses Except the Government's Case Agent**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter, ICE Agent Rafael Silva, has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. As such, the case agent's presence at trial is necessary to the United States. However, the Government requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

**B.     The Court Should Admit Demeanor Evidence**

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew drugs were concealed in the vehicle. Fed. R. Evid. 701 (stating in part that a non-expert witness may testify "in the form of opinions or inferences . . . which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue"); United States v. Hursh, 217 F.3d 761 (9th Cir. 2000) (holding that jury may consider defendant's nervousness during questioning at a port of entry); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico Port of Entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); United States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991) (holding that jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

It is anticipated that Government witnesses will testify about Defendant's demeanor – in

particular her manner and type of communication with the inspectors – at the time she crossed the border at Calexico West Port of Entry. United States inspectors and agents may properly testify to Defendant's behavior, demeanor, and physical appearance because they have personal knowledge based upon their observations of Defendant. Accordingly, this evidence should be admitted.

### C.     The Court Should Admit Expert Testimony By The Government

#### 1.     Introduction

The Government moves this Court to admit expert testimony regarding the value and identity of the marijuana involved in this case and, <u>if necessary</u>, the modus operandi of drug couriers and the Treasury Enforcement Communications System ("TECS"). The Government intends to call Special Agent Anthony Zenteno with the United States Immigration and Customs Enforcement as an expert in narcotics trafficking, the value of the marijuana, and distributable quantities of marijuana. Absent a stipulation, the Government also intends to call a forensic chemist with the Drug Enforcement Administration to testify that the substance found in Defendant's vehicle is cocaine. The Government provided the background and anticipated opinion of its forensic chemist in a separate correspondence dated March 21, 2008. The Government has provided Defendant with notice of the experts' anticipated opinion and will provide the experts' name and qualifications well in advance of the date set for trial in this matter.

The Government has also provided Defendant notice and information regarding the qualifications of Immigration and Customs Enforcement Special Agent Reuben McDowell, an expert in the TECS system. Although the Government does not at this time intend to use evidence of TECS or the testimony of Agent McDowell, the Government reserves the right to utilize such evidence to respond to or rebut any evidence or argument advanced by Defendant in the course of trial.

#### 2.     Standard of Admissibility

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The trial judge is the gatekeeper regarding the type and scope of expert testimony that should be admitted in any particular trial, and has "broad latitude" in determining the relevance and reliability of such testimony. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 142 (1999).

Determining whether expert testimony would assist the trier-of-fact in understanding the facts in issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). The district court may consider the Daubert test or any other factors in addressing relevant reliability concerns regarding expert testimony. Kumho, 526 U.S. at 149-50 (noting that "there are many different kinds of experts, and many different kinds of expertise," including, "experts in drug terms, handwriting analysis, criminal modus operandi[.]").

The expert's opinion may be based on hearsay or facts not in evidence when the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; *see, e.g.*, United States v. Gil, 58 F.3d 1414, 1422 (9th Cir. 1995) ("We have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendant's modus operandi") (internal quotations omitted); see also United States v. Hankey, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (affirming district court's admission of gang expert testimony that gang members would be subject to violent retribution if they testified against another gang member).

An expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704; United States v. Plunk, 153 F.3d 1011, 1018 (9th Cir. 1998). An experienced narcotics agent may testify in the form of an opinion even if that opinion is based in part on information from other agents familiar with the issue. United States v. Golden, 532 F.2d 1244, 1248 (9th Cir. 1976). The proposed expert testimony "alerts [the jury] to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir. 1984).

### 3. Evidence Regarding Value of Marijuana

The Government intends to offer testimony from its narcotics expert regarding the quantity of marijuana found in Defendant's vehicle, and the retail or "street" value and the wholesale value of the marijuana both in the United States and in Mexico. It is well-established under Ninth Circuit precedent that the use of such expert testimony is permissible.

In United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994), the defendant was charged with importation of heroin. At trial, the Government introduced expert testimony regarding the street value

of the heroin, assuming the drugs had been repeatedly cut and sold on the street. The Ninth Circuit held that admission of such testimony was proper and that counsel can argue reasonable inferences from the evidence. Id. at 812; *see also* United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (noting that price, quantity and quality of narcotics are relevant to demonstrate defendant's knowledge of the drugs and intent to distribute them); United States v. Kearney, 560 F.2d 1358, 1369 (9th Cir. 1977) (finding street value of narcotics relevant to demonstrate defendant's knowledge).

The testimony of Agent Zenteno regarding the quantity and value of the marijuana seized is circumstantial evidence of the Defendant's knowledge of the marijuana in the vehicle and her intent to distribute it when she drove to the Calexico West Port of Entry the day of her arrest. Knowledge and intent are essential elements of the offenses charged. The value testimony will tend to show that Defendant knew she possessed the illegal drugs and intended to further distribute them. Most importantly, such evidence will also help the jury understand the role of the international border on the value of the narcotics, and the facts at issue in this case. Accordingly, such testimony constitutes a proper area for expert testimony and should be admitted.

**4.    46.34 Kilograms of Marijuana Is an Amount for Distribution**

The Government intends to introduce expert testimony that 46.34 kilograms of marijuana (101.94 lbs) is an amount for distribution, not for personal use. As indicated in the case law cited above, such evidence is relevant and admissible. Kinsey, 843 F.2d at 387-88. The Government intends to offer the narcotics expert's testimony to show that Defendant intended to distribute the marijuana found in her vehicle. Such testimony is relevant to the issues of knowledge and intent to distribute; it is particularly significant to the jury's understanding of the facts in this case because the amount of marijuana, although substantial, is small relative to many other newsworthy drug-importation cases. Thus, the Court should allow such evidence to enable the Government to prove the essential elements of the charged offenses.

**5.    Expert Testimony that the Substance Seized Is Marijuana**

Absent a stipulation by the Defendant, the Government intends to call a forensic chemist from the Drug Enforcement Administration to testify that the substance seized from the Defendant's vehicle is marijuana, a Schedule I controlled substance. The Government anticipates that the forensic chemist

will testify that he performed various tests on the substance seized from the Defendant's vehicle, and that these tests all indicated that the substance is in fact marijuana. This expert will base his opinion on his background, education and experience, along with the his knowledge and use of accepted scientific methods of testing. This testimony bears directly on an element of the charged offense – that marijuana is a prohibited drug.

### 6.     Evidence Regarding Modus Operandi of Drug Couriers

The Government moves to present expert testimony regarding the modus operandi of drug couriers **if** Defendant opens the door to such evidence during opening statement, cross-examination, or Defendant's case-in-chief. Such testimony would be limited to the following issues: (1) that drug traffickers typically do not entrust large amounts of drugs or money to unknowing couriers; and (2) that couriers, such as Defendant, do not typically participate in the loading or unloading of narcotics. Such testimony is proper to help the jury understand the evidence in the case, to put that evidence in a relevant context and to ensure the jury does not decide the case in a vacuum. The evidence is relevant to the question whether Defendant knew of the drugs in the vehicle he drove into the United States. This is exactly the type of evidence the Ninth Circuit deemed appropriate in United States v. Murillo, 255 F.3d 1169, 1176-78 (9th Cir. 2001), *overruled on other grounds*, United States v. Mendez, 476 F.3d 1077 (9th Cir. 2007), and numerous other decisions.

Federal Rule of Evidence 702 allows an expert witness to testify if "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. However, even when expert testimony is otherwise admissible, it may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The street value of illegal drugs, the distribution quantities, the modus operandi of drug traffickers and the structure of drug trafficking organizations are matters that are generally beyond the common knowledge of the average lay person. United States v. Valle, 72 F.3d 210, 215 (1st Cir. 1995). Thus, expert testimony in the form of an opinion regarding these subjects is likely to help a jury. Id. Whether such expert testimony will be admissible depends on the nature of the expert testimony. The Ninth Circuit has drawn a distinction between expert testimony involving the structure of drug trafficking organizations and drug courier profiles on the one hand, and expert testimony involving the modus

operandi of drug traffickers or "unknowing couriers," on the other.

With respect to expert testimony concerning the structure of drug trafficking organizations, this Court has held that such expert testimony is generally not relevant or admissible, except (1) when the defendant is charged with a conspiracy; or (2) when such evidence is otherwise probative of a matter properly before the trial court. *See, e.g.*, United States v. Pineda-Torres, 287 F.3d 860, 863 (9th Cir. 2002); United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), *as amended by* 246 F.3d 1150 (9th Cir. 2001) (holding that expert testimony regarding structure of drug trafficking organizations was not relevant and was prejudicial where the defendant was not charged with a conspiracy to import and there was no evidence of defendant's connection to a drug trafficking organization).[1] With regard to expert testimony about drug courier profiles, the Ninth Circuit has held that is inherently prejudicial and, thus, generally not admissible. *See* United States v. Cordoba, 104 F.3d 225, 229-30 (9th Cir. 1997).

In contrast, "unknowing courier" expert testimony is admissible, even if a defendant's case is not complex or does not involve a conspiracy charge, as long as the "unknowing courier" expert testimony is relevant. For example, in Murillo, the defendant was convicted for possessing cocaine with the intent to distribute it after the trial court admitted "unknowing courier" expert testimony during his trial. The Court affirmed the admission of the expert testimony, holding that the "unknowing courier" testimony was relevant because it went to the heart of the defense that he did not know he was transporting drugs. Murillo, 255 F.3d at 1177.

Similarly, in Cordoba, the defendant was convicted in a non-conspiracy case of possession with intent to distribute cocaine and challenged on appeal the admission of "unknowing courier" expert testimony. Cordoba, 104 F.3d at 227, 229. The Ninth Circuit affirmed the admission of "unknowing courier" testimony, holding that "unknowing courier" expert testimony that drug traffickers do not entrust valuable cocaine to unknowing transporters was clearly probative of the defendant's knowledge that he possessed drugs and that the testimony's probative value outweighed any prejudicial effect. Id.

---

[1] Notably, footnote three of the amended Vallejo opinion makes clear that, "[t]his case does *not* involve the Government's use of 'unknowing courier' testimony, in which a law enforcement official testifies that certain drug traffickers do not entrust large quantities of drugs to unknowing transporters. Therefore, we do *not* address the admissibility of such testimony." Id. (emphasis added). Thus, Vallejo is inapplicable in this case.

1  at 229. *See also* United States v. Castro, 972 F.2d 1107 (9th Cir. 1992) (holding that the jury could have
2  reasonably found that the defendant knew he possessed cocaine where "experts testified that the amount
3  of cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe").

4    Murillo affirmed what had been, prior to Vallejo, a well-established rule in the Ninth Circuit,
5  as well as other circuits, that expert testimony regarding the modus operandi of a particular business is
6  admissible even in non-complex, non-conspiracy cases provided the testimony is relevant and helpful
7  to the jury in understanding a fact at issue. *See* United States v. Campos, 217 F.3d 707, 712, 719 (9th
8  Cir. 2000) (affirming admission of expert testimony during Government's case-in-chief regarding the
9  value of marijuana seized and the structure of drug-smuggling organizations in non-complex case in
10 which conspiracy was not charged); Cordoba, 104 F. 3d at 229-30 (holding that "expert testimony that
11 drug traffickers do not use unknowing transporters was clearly probative of Cordoba's knowledge that
12 he possessed narcotics").

13   In the present case, the nature of the proposed testimony is precisely the type of testimony found
14 to be relevant and admissible in Murillo and Cordoba. As in Murillo and Cordoba, Defendant was not
15 charged with conspiracy and the unknowing courier expert testimony will go to the heart of the
16 Defendant's expected defense that she did not know the cocaine was hidden in her vehicle and that it
17 must have been placed there by persons known or unknown. Further, the Government's testimony will
18 help the jury's understanding of the evidence and aid its determination regarding facts at issue, namely,
19 the Defendant's knowledge and intent, and is therefore relevant. *See* United States v. Sanchez-Lopez,
20 879 F.2d 541, 555 (9th Cir. 1989) (price, quantity and quality of drugs found relevant to intent to
21 distribute drugs and to knowledge of their presence in the car).

22   Evidence about the drug-trafficking business, as well as admission of evidence about the modus
23 operandi of drug couriers, is consistent with well-established law allowing expert testimony about a
24 criminal organization's operations as relevant to a defendant's knowledge. *See* Alonso, 48 F.3d at 1540
25 (holding that law-enforcement officers may testify regarding "typical methods and techniques employed
26 in an area of criminal activity," and explain how defendant's conduct conforms to typical methods)
27 (quotation omitted); Gil, 58 F.3d at 1421-22 (admitting expert testimony regarding general practice of
28 drug traffickers); United States v. Bosch, 951 F.2d 1546, 1549-50 (9th Cir. 1991) (holding that agent

with expertise in narcotics investigations may aid jury in understanding defendant's role in charged offense); United States v. Jaramillo-Suarez, 950 F.2d 1378, 1384 (9th Cir. 1991) (holding that expert properly testified regarding drug organization's use of pay-owe sheets to keep track of customers); United States v. Guzman, 849 F.2d 447, 448 (9th Cir. 1988) (admitting expert agent's testimony that switching cars is common tactic used by narcotics traffickers); United States v. Patterson, 819 F.2d 1495, 1507 (9th Cir. 1987) (permitting expert testimony that members of narcotics rings play many different roles, including street salesmen, money collectors, and lookouts); United States v. Stewart, 770 F.2d 825, 831 (9th Cir. 1985) (allowing expert testimony that defendant engaged in counter-surveillance while driving on one occasion and was likely going to distribute drugs on another); United States v. Maher, 645 F.2d 780, 783 (9th Cir. 1981) (allowing expert testimony that a defendant's actions were consistent with the modus operandi of persons transporting drugs).

Given the case law above, this Court should allow expert testimony about the role and modus operandi of drug couriers. The Government does not intend to introduce drug courier evidence during its case-in-chief. However, the Government reserves the right to introduce expert testimony about the modus operandi of drug trafficking organizations, testimony about so-called blind mules, and drug courier profiles, if Defendant opens the door to any of those categories of evidence during opening statement, cross-examination, or Defendant's case-in-chief. *See* United States v. Beltran-Rios, 878 F.2d 1208, 1212-13 (9th Cir. 1989) (testimony about type of individual used as drug "mule" admissible where defense counsel opens door). This Court should admit the requested evidence for the foregoing reasons and to avoid the risk that the jury may not understand how Defendant's arguably innocuous acts comport with drug smuggling.

**7.     Evidence Regarding TECS Computer System**

At this point, the Government does not plan to introduce Treasury Enforcement Communication System ("TECS") evidence during its case-in-chief as Rule 404(b) evidence or evidence that may be "inextricably intertwined" to the charges against Defendant. However, if during Defendant's case, information from TECS becomes relevant for impeachment or otherwise, the Government requests to introduce the TECS records in this case. As such evidence is not subject to Rule 404(b), or any

discovery obligation on the part of the Government, the records will not be disclosed pre-trial.[2]

United States v. Sanchez-Robles, 927 F.2d 1070 (9th Cir. 1991), *disapproved on other grounds by* United States v. Heredia, 483 F.3d 913 (9th Cir. 2007), is analogous here. In Sanchez-Robles, the defendant was convicted of importation of marijuana and cocaine, as well as possession of those drugs with intent to distribute, stemming from her arrest at the Calexico Port of Entry. Id. at 1070. During its rebuttal case, the Government offered TECS evidence to show border crossings of both the defendant's vehicle, and the vehicle she drove on the night of her arrest. Id. at 1078. This evidence was offered for two purposes. First, to contradict the story given by the defendant to customs officials upon her arrest, when she explained that she borrowed the vehicle from a friend she had known for just one month. The TECS evidence showed that the van she borrowed and her own vehicle made several crossings close in time to one another before the defendant claimed to have known the owner of the van. Id. Second, the defendant's daughter testified at trial that she was on a date in the family vehicle on the evening of the defendant's arrest. The TECS evidence offered by the Government showed no crossing that evening. Id. The Ninth Circuit upheld the use of the TECS evidence as relevant evidence and not in violation of rule 404(b). The Court held that the evidence was not character evidence because it was not used to show that the defendant acted in conformance based on character, and it was "inextricably intertwined" to the offense conduct charged and, accordingly, held that the TECS evidence was properly admitted. Id.

### D.     The Court Should Preclude Expert Testimony Offered By Defendant

Pursuant to Federal Rules of Criminal Procedure 16(b) and 26.2, the Government has requested that the Defendant disclose to the Government all exhibits and documents which the Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom the Defendant intends to call at trial. Moreover, the Government is also entitled to disclosure of written summaries of testimony that the Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries should describe the witnesses' opinions, the

---

[2] *See* United States v. Delia, 944 F.2d 1010, 1017-18 (2d Cir. 1991) (holding that Government is not required under any prong of Rule 16 to disclose rebuttal evidence which it intends to use against a proposed line of defense); United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988) (holding that trial court order requiring Government to disclose "any and all impeachment evidence . . . which tends to negate guilt" including rebuttal evidence exceeded scope of court's authority under Rule 16).

bases and reasons for those opinions, and the witnesses' qualifications. To date, the Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, the Defendant should not be permitted to introduce any expert testimony unless he provides adequate and timely disclosures. The Government requests that the Defendant be required to provide expert notice and disclosures at least three weeks prior to the date set for trial in this matter to allow the Government adequate time to review the discovery and determine if a hearing is required. See FRE 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).

**E.   The Court Should Admit the Vehicle Registration**

   **1.   The Vehicle Registration Is Not Hearsay**

Among the items found in Defendant's vehicle when she was apprehended at the Port of Entry was a Mexican vehicle registration document for the registration of the vehicle in question, namely, a blue 1989 Chevrolet Blazer bearing Baja California license plate number BEH4865. The registration indicates that the vehicle was registered in the name of Esmeralda Salazar-Sandoval on August 8, 2007. This document should be admitted because it is not hearsay.

Federal Rule of Evidence 801(d)(2)(B) provides that a statement is not hearsay if it is "offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." Because adoptive admissions are not hearsay, they may be admitted into evidence. United States v. Ospina, 739 F.2d 448, 451 (9th Cir. 1984), *citing* United States v. Marino, 658 F. 2d 1120, 1125 (6th Cir. 1981).

Under the "possession plus" standard, a writing becomes an adoptive admission "where the surrounding circumstances tie the possessor and the document together in some meaningful way." United States v. Pulido-Jacobo, 377 F.3d 1124, 1132 (10 th Cir. 2004), *citing* Ospina, 739 F.2d at 451. For example, in Pulido, the court properly admitted a receipt for the purchase of speakers because the receipt was found in the defendant's possession and the speakers were found in the trunk of the defendant's car, thereby tying the defendant to the document. Id. at 1132. In this case, Defendant had the vehicle registration in her possession at the time of her arrest. Moreover, she manifested a belief in the contents of the registration by telling the inspectors at the Port of Entry that she owned the vehicle. The registration is an adoptive admission under the possession plus standard and therefore

admissible.

### 2. Duplicates Are Admissible

In addition, the court should admit a copy of the document. Most of the original documents were returned to Defendant along with her personal property. In the event that the original vehicle registration taken from Defendant is no longer available, the Court should allow the introduction of a copy of this document. The Government anticipates having a witness with knowledge of both the original document seized from Defendant as well as the copy that was made of the document.

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under circumstances, it would be unfair to admit the duplicate instead of the original. Fed.R.Evid. 103. In the present case, no question has been raised as to the authenticity of the original vehicle registration found in Defendant's car. Moreover, because the original document was returned to Defendant, the only possible unfairness would be in failing to admit the duplicate.

### F. The Court Should Not Require Proof of Each Link in the Chain of Custody

The Government intends to introduce evidence of the 46.34 kilograms of marijuana discovered in the side walls, quarter panels, tailgate and spare tire of Defendant's vehicle when she entered the United States. Evidence of the marijuana, which was first seized by inspectors and later tested by a DEA chemist, is admissible because there is a presumption of regularity in its handling by these public officials and the testimony of these witnesses will show that the marijuana has not changed in a material way since its seizure.

The Government should not be required to prove every link in the chain of custody in order for the marijuana evidence to be admissible. The test of admissibility of physical objects connected with the commission of a crime requires a showing that the object is in substantially the same condition as when the crime was committed (or the object seized). Factors to be considered are the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of inter-meddlers tampering with it. There is, however, a presumption of regularity in the handling of exhibits by public officials. United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981), cert. denied, 445 U.S. 856 (1982), overruled on other grounds, United States v. DeBright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).

If this Court finds that there is a reasonable possibility that a piece of evidence has not changed in a material way, the Court has the discretion to admit the evidence. Id.

The Government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence. Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). The marijuana seized from Defendant's vehicle was marked, photographed, secured, and transported in accordance with standard operating procedures. Because the marijuana has not changed in a material way and has been properly preserved, the Government should not have to prove every link in the chain of custody from the time it was seized through the time of trial.

### G. The Court Should Preclude Reference To Defendants' Health, Age, Education and Potential Punishment

Evidence of, and thus argument referring to, a defendant's health, age, education and potential punishment is inadmissible and improper. Fed. R. Evid. 402 provides that "[e]vidence which is not relevant is not admissible." Rule 403 provides further that, even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2003 Edition). Additionally, [i]t has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991); see Shannon v. United States, 512 U.S. 573, 579 (1994)(jury should be instructed to reach its verdict without regard to the sentence that might be imposed).

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. At trial, however, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification.

### H. The Court Should Exclude Evidence of Prior Good Acts

Defense counsel should be prohibited from arguing or eliciting testimony or evidence concerning Defendant's prior good conduct. "Evidence of good conduct is not admissible to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991). Under Rule 404(b), evidence of other acts, including other "good" acts (or the mere absence of prior "bad" acts), are "not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

Furthermore, even when character evidence is admissible, evidence of specific instances of conduct is not admissible unless "character or a trait of character of a person is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b); see also Michelson v. United States, 335 U.S. 469, 477 (1948) ("The witness may not testify about defendant's specific acts or courses of [good] conduct or his possession of a particular disposition or of benign mental and moral traits.").

In particular, testimony concerning a Defendant's lack of a criminal record is inadmissible, unless such character evidence is an essential element of the charge or defense. See, e.g., United States v. Thomas, 134 F.3d 975, 979-80 (9th Cir. 1998) (testimony concerning defendant's lack of a prior criminal record admissible where defendant raises an entrapment defense, because defendant's character "is an 'essential element' of the defense" of entrapment; specifically, the prosecution must prove beyond a reasonable doubt that defendant was predisposed to commit the crime); see United States v. Barry, 814 F.2d 1400, 1404 (9th Cir. 1987)("the trial court acted within its discretion in concluding that this general evidence of an absence of criminal conduct was not probative of appellant's state of mind at the time he committed the crime"); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989)(citing Barry with approval; "evidence of specific acts is generally inadmissible"); see also Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985)("testimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught").

Thus, the defense should be precluded from presenting evidence of any specific instances of good conduct.

**I.     The Court Should Preclude Self-Serving Hearsay**

An attempt by Defendant to prove her own statements through the testimony of another witness would be impermissible, because those statements are inadmissible hearsay. Defendant cannot rely upon Rule 801(d)(2), because he or she is the proponent of the evidence and because the evidence is not being offered against him. Defendant would simply be seeking to have self-serving hearsay brought before the jury without the benefit of cross-examination by the Government. *See* United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam). While a defendant is certainly entitled to invoke his or her Fifth Amendment right to remain silent at trial, Defendant is not also entitled to present self-serving hearsay to the jury without cross-examination. *See* id. ("It seems obvious defense counsel

wished to place Fernandez's statement to Bateman before the jury without subjecting Fernandez to cross-examination, precisely what the hearsay rule forbids."). Nor can Defendant rely upon Rule 801(d)(1)(B) concerning prior consistent statements. A prior consistent statement is not admissible if it is introduced in the absence of impeachment. United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976). Defendant cannot rely upon the state of mind exception under Rule 803(3) because that is a limited hearsay exception that "does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind." Emmert, 829 F.2d at 810 (quoting United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir. 1980)).

## IV

## **GOVERNMENT'S RENEWED MOTION FOR RECIPROCAL DISCOVERY**

To date, the Defendant has produced no reciprocal discovery. The Government requests that the Defendant comply with Rules 12.2 and 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of the Defendant. The Defendant has not provided the Government with any documents, photographs, or statements. Accordingly, the Government intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the Government.

## V

## **CONCLUSION**

For the above stated reasons, the Government respectfully requests that its Motions in Limine and Renewed Motion for Reciprocal Discovery be granted.

DATED: March 28, 2008.                Respectfully submitted,

                                      KAREN P. HEWITT
                                      United States Attorney


                                      s/ Rebecca Kanter
                                      REBECCA S. KANTER
                                      Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR0285-H |
| | ) | |
| Plaintiff, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| v. | ) | |
| | ) | |
| ESMERALDA SALAZAR-SANDOVAL, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED that:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **NOTICE OF GOVERNMENT'S MOTIONS AND MOTIONS IN LIMINE** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Leila Morgan, Federal Defenders
2. Reuben Cahn, Federal Defenders

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1. None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2008.

                                                        s/ Rebecca Kanter
                                                        REBECCA S. KANTER