KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant United States Attorney
California Bar Number 230257
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6747
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | ) | Criminal Case No.  08CR0285-H |
|---|---|---|
| | ) | |
| | ) | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AUTHORIZE A FOREIGN DEPOSITION OR ADMIT VIDEOTAPED STATEMENT** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Date:       May 12, 2008 |
| | ) | Time:       2:00 p.m. |
| ESMERALDA SALAZAR-SANDOVAL, | ) | Honorable:  Marilyn L. Huff |
| | ) | |
| Defendant. | ) | |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Rebecca S. Kanter, Assistant United States Attorney, hereby files its Response to Defendant's motion to authorize a foreign deposition or admit videotaped statements. This response is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

**I**

**STATEMENT OF THE CASE**

On February 5, 2008, a federal grand jury in the Southern District of California returned a two-count Indictment charging defendant Esmeralda Salazar-Sandoval ("Defendant") with (i) importing approximately 46.34 kilograms (101.94 pounds) of marijuana into the United States in violation of Title 21, United States Code, §§ 952 and 960; and (ii) possessing that marijuana with the intent to distribute it, in violation of Title 21, United States Code, § 841(a)(1). Defendant was arraigned on the Indictment on February 5, 2008, and pleaded not guilty.

**II**

**STATEMENT OF FACTS**

**A.     Defendant's Arrest**

On January 21, 2008, at approximately 1:39 p.m., Esmeralda Salazar-Sandoval ("Defendant") drove a 1989 Chevrolet Blazer to the Calexico West Port of Entry. Defendant applied for entry into the United States and told Customs and Border Protection Officer Weir that she had nothing to declare. Defendant said she was going to Wal-Mart. She stated she had owned the vehicle for over a year and a half. She also stated that she and her husband worked at an auto repair shop. CBP Officer Weir noticed that the vehicle appeared to be too clean and referred her to the secondary inspection lot.

In the vehicle secondary lot, a narcotics detection dog alerted to the passenger side quarter panel. Defendant told CBP Officer Galaviz that she was the owner of the vehicle and was driving to the Wal-Mart in Calexico. CBP Officer Galaviz inspected the vehicle and found a total of 46 packages of marijuana contained in the quarter panels, spare tire, tailgate, and both the driver and passenger side doors. Newspaper was found in the compartments underneath and around the packages of marijuana. The total weight of the marijuana was 46.34 kilograms (101.94 pounds). After being advised of her <u>Miranda</u> rights, Defendant elected to invoke her rights and all questioning ceased.

In addition to the marijuana, Agents found a Mexican registration document for the vehicle in the name of Esmeralda Salazar-Sandoval showing a registration date of August 8, 2007.

**B.    Videotaped Interview**

On March 27, 2008, Defendant filed a motion pursuant to Federal Rule of Criminal Procedure 15 seeking authorization from this Court to conduct foreign depositions of two witnesses – Maria Delores Sandoval-Perales and Reynaldo Medina.  *See* Exh. A.  The Court declined to grant an additional hearing regarding this motion and informed Defendant that the motion would be heard at the time of the motions *in limine* hearing on April 7, 2008.  Id.

On April 2, 2008, Defendant notified the U.S. Attorney's office of Defendant's intention to "take videotaped testimony from witnesses on Friday, April 4, 2008." Id.  Defendant indicated that the "depositions" would be conducted at noon in "an office of a notary public in Mexicali, Baja California, Mexcio [sic]."  Id.  On April 3, 2008, at 3:48 p.m., Defendant notified the U.S. Attorney's Office of the specific location of the interviews, indicating that they would be conducted at "Notaria Publica Numero 10, Licenciado Ramiro E.  Duarte Quijada" in Mexicali, Baja California.  *See* Exh. B.

On Friday, April 4, 2008, at approximately 8:00 p.m., Defendant provided the U.S. Attorney's office with a videotape containing a statement purportedly given by Sandoval-Perales.  Medina, it appears, declined to appear.

On April 7, 2008, the day before trial, this Court held a hearing on the motions *in limine*.  Defendant orally withdrew the motion to take a deposition as to Medina and moved to admit the videotape of Sandoval-Perales under United States v. Sanchez-Lima.  The Court initially denied Defendant's motion to admit the videotape.  Upon further urging by Defendant to admit the videotape, the Court vacated the trial date and set a motions date of May 12, 2008, in order to provide the parties with more time to brief the issue.

**III.**

**DISCUSSION**

**A.    DEFENDANT'S REQUEST TO TAKE A FOREIGN DEPOSITION SHOULD BE DENIED**

Defendant moves this Court to grant a motion to conduct a foreign deposition pursuant to Federal Rules of Criminal Procedure 15(a).  Defendant has the burden of showing "exceptional circumstances" and that granting the foreign deposition is "in the interest of justice."  Fed.R.Crim.P.

15(a)(1). Defendant has not established the exceptional circumstances required to order a foreign deposition.

Defendant has the burden of showing "exceptional circumstances" and that granting the foreign deposition is "in the interest of justice." Fed.R.Crim.P. 15(a). Depositions in criminal cases, and particularly foreign depositions, are disfavored for several reasons: the witness is not subject to sanctions for perjury; the jury, defendant, or cross-examiner may be unable to confront the witness and view his or her demeanor; and the gravity of the proceedings is not impressed upon the witness. United States v. Drogoul, 1 F.3d 1546, 1551-52 (11th Cir. 1993); United States v. Alvarez, 837 F.2d 1024, 1029 (11th Cir. 1988). Furthermore, "because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored." Drogoul, 1 F.3d at 1551. Accordingly, district courts have been granted "broad discretion" in determining whether the particular circumstances of a case present the "exceptional circumstances" required by Rule 15(a). United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998).

In determining whether the particular circumstances of the case present the "exceptional circumstances" required by Rule 15(a), the district court must consider the following factors: (1) whether the witness is actually unavailable, United States v. Zuno-Arce, 44 F.3d 1420, 1425 (9th Cir. 1995); (2) whether good faith efforts have been made to obtain the witnesses' presence at trial, id.; (3) whether the deponent would be available at the proposed location for deposition and would be willing to testify, id.; (4) whether the movant has demonstrated that the expected testimony would be favorable (*i.e.*, would help to exculpate the defendant), id.; *see also*, United States v. Murray, 492 F.2d 178, 195 (9th Cir.1973); (5) whether the proposed evidence to be gathered in the deposition is relevant, non-cumulative and admissible under the rules of evidence, United States v. Hernandez-Escarsega, 886 F.2d 1560, 1569 (9th Cir. 1989); (6) whether the deponent is a fugitive, id.; People of the Territory of Guam v. Ngirangas, 806 F.2d 895, 896-97 (9th Cir. 1986) (holding fugitive status is a factor to consider but cannot by itself be the only reason for denying a deposition); (7) whether the safety of United States officials would be compromised if the deposition were taken in a foreign country, Murray, 492 F.2d at 194-95; and (8) whether the motion was filed timely. United States v. Dearden, 546 F.2d 622, 625 and n. 2 (5th Cir. 1977). These factors will be addressed below.

### 1. Defendant Has Not Shown That Sandoval-Perales Is Unavailable

Defendant asserts that "Ms. Sandoval is clearly unavailable [because] [s]he reside in Mexico, beyond the subpoena power of the United States." Def. Memo at 4. However, the mere fact that a witness resides in Mexico beyond the subpoena power of United States does not render them unavailable. As this Court is well aware, witnesses can be and are paroled into the United States from Mexico all the time for purposes of testifying at trial on a Defendant's behalf. Defendant acknowledged this fact at the motion hearing, advising the Court during the scheduling of trial "that it's going to be necessary for Ms. Salazar-Sandoval to actually parole in witnesses." Ex. C at 5. Defendant's counsel acknowledged her "understanding" of the parole process, advising the Court that "It takes at least two weeks to do that." Id. The Court advised Defendant to "get [her] parole letters out right away." Id. Given the well-established process for enabling a witness to come to the United States to testify at trial on a Defendant's behalf, the mere fact that the witness is beyond the court's subpoena power does not necessarily render the witness "unavailable."

Defendant argues that Sandoval-Perales is unable to travel to San Diego for a trial because she "is extremely ill, suffering from a grave heart condition." Def. Mem. at 4. However, Sandoval-Perales has indicated that she is able to travel to the Port of Entry; in fact, she went to the Port of Entry after her daughter was arrested in order to retrieve her daughter's purse. Def. Exh. A at 9. Defendant has clearly demonstrated that she is able to travel to the United States.

### 2. Defendant Has Failed to Show A Good Faith Effort to Obtain the Witnesses' Presence at Trial

Defendant has failed to show a good faith effort to secure the witnesses at trial. Defendant explicitly advised this Court at the motions hearing on March 17, 2008, that witness would need to be paroled into the United States for purposes of testifying at trial. Exh. C at 5. The Court advised Defendant to prepare letters requesting that the witnesses be paroled in, and the United States indicated its willingness to cooperate in this effort. Ex. C at 5. Defendant never provided the United States with the names of the witness and other information necessary for the United States to make any arrangements to parole the witnesses into the United States, despite repeated attempts by the United States to solicit such information from Defendant in order to begin the process. Defendant has not

made a good faith effort to obtain the witness's presence at the trial through the traditional means, and instead is prematurely requesting the "disfavored" alternative of conducting a foreign deposition.

        3.      <u>Defendant Has Not Shown That the Testimony Would Be Relevant, Non-cumulative, Favorable To Defendant, and Admissible Under the Rules of Evidence</u>

Defendant argues that the testimony by Sandoval-Perales is favorable to Defendant. A careful review of Sandoval-Perales's recorded statement, however, reveals that much of what she would testify to in a deposition is either not admissible or is not favorable to Defendant.

Sandoval-Perales stated that her daughter owned the truck for 8 or 9 months. Def. Exh. A at 6. This statement directly contradicts her daughter's statement to the primary officer that she owned the vehicle for a year and a half, and is therefore not favorable to Defendant.

Sandoval-Perales stated that her daughter told her that she was going to take the car to a shop that her friend recommended. Def. Exh. A at 7-8. Sandoval-Perales also stated that her daughter told her that she was going to go to the United States to get bring back parts. Id. Even assuming these statements are favorable to Defendant, as articulated in greater detail below, these statements are inadmissible hearsay. *See infra* at § III.C. Therefore, even if the Court granted the deposition, and if the witness repeated her prior statements, none of these statements could be offered into evidence by Defendant at trial.

Defendant has not show how any of the remaining information provided by Sandoval-Perales – for example, what her daughter was wearing on her day of arrest and the contents of her purse – are favorable. Because Defendant has not demonstrated that Sandoval-Perales could provide admissible, favorable, non-cumulative testimony, the request to conduct a foreign deposition should be denied.

        4.      <u>Defendant Has Not Shown That Sandoval-Perales Is a Fugitive</u>

To the Government's knowledge, Defendant's mother is not a fugitive from the United States. Although paroling in witnesses can be problematic where the witness is a fugitive and therefore likely to be taken into custody if he or she enters the United States, here there is no suggestion that this would be a concern with respect to Maria Delores Sandoval-Perales. *Compare* <u>United States v. Hernandez-Escarsega</u>, 886 F.2d 1560, 1569 (9th Cir. 1989) (considering as one factor the fugitive status of a

6

deponent in Mexico who had an outstanding federal indictment in the United States and refused to come to the United States to testify.)

     5.    <u>Taking the Deposition In Mexico Could Compromise the Safety of United States Officials</u>

Members of United States law enforcement agencies are often at risk by traveling to remote locations in Mexico. There has been many recent and well-documented reports of increasing violence in many border communities in particular, including Mexicali. *See, e.g.*, S. Lynne Walker, *Acapulco's Loss of Innocence*, SAN DIEGO UNION TRIBUNE, February 15, 2006, http://www.signonsandiego.com/uniontrib/20060215/news_1n15acapulco.html (noting that Mexicali is one of the Top Four most crime-ridden cities in Mexico.)

     6.    <u>Defendant's Motion Was Not Timely Filed</u>

Finally, Defendant did not file a motion to take the depositions of the two witnesses in Mexico before the first motion hearing date. Significantly, Defendant specifically indicated to this Court at the motions hearing on March 17, 2008, that she intended to ask the Government to parole into the United States two necessary defense witnesses. *See* Exh. C. Defendant continued to make the assertion that it would be necessary to parole witnesses into the United States until March 31, 2008, the day Defendant filed the first motion to take foreign depositions, just ten calendar days before the beginning of trial. The timeliness of such a motion is critical in light of the logistical challenges to taking foreign depositions. The funding for the translator, a court-reporter and a videographer to travel to Mexico requires special authorization, which takes time to process. Moreover, the Government officials traveling to Mexico for the deposition, including the Assistant United States Attorney, must receive special authorization to travel to a foreign country to conduct business. This process takes time; the motion should have been filed sometime in the last several months, not ten days before trial. The fact that the motion was renewed after the trial date was continued does not add to its timeliness. Therefore, the motion is not timely and should be denied. *See* <u>Zuno-Arce</u>, 44 F.3d at 1424 (motion to depose witnesses denied where motion was made only three weeks before trial); *see also* <u>Ruiz-Castro</u>, 92 F.3d at 1533 (motion to depose witnesses denied where motion was made five weeks before trial); *see also* <u>Milian-Rodriguez</u>, 828 F.2d at 686 (motion to depose witnesses denied where it was "filed in

the late stages of the pretrial proceedings"); *see also* Heflin v. United States, 223 F.2d 371 (5 th Cir. 1955) (holding that a Rule 15 motion mate five days before trial was properly denied for inexcusable delay); *compare* Drogoul, 1 F.3d at 1556 (finding that the district court erred in finding that the movant failed to exercise due diligence where the motion to depose witnesses was filed five months before trial.)

**B.   The Court Should Exclude Out-of-court Videotaped Statements**

Defendant has moved to admit the videotaped statement of Sandoval-Perales under the "residual exception" to the hearsay rule. Fed. R. Evid. 807. Rule 807 states:

> A statement not specifically covered by Rule 803 or 804 but having **equivalent circumstantial guarantees of trustworthiness**, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 807 (emphasis added).

Defendant argues that Sandoval-Perales's statement is admissible under Rule 807 pursuant to United States v. Sanchez-Lima, 161 F.3d 545 (9th Cir. 1998). Def. Memo at 5-6. In Sanchez-Lima, the defendant, an illegal alien, was charged with assaulting a border patrol agent when he was apprehended. Id. at 546. Other undocumented aliens who were apprehended with the defendant were interviewed by both the United States and the defense, and were also examined before the Grand Jury, prior to being returned to Mexico. Id. at 547. Subsequently, the defense conducted sworn, video-taped statements of the witnesses at the U.S. Embassy in Mexico. Id.[1] The defendant "argue[d] that the sworn, videotaped statements of the eyewitnesses in Mexico should have been admitted into evidence under the 'catch-all' hearsay exception of the Federal Rule[s] of Evidence." Sanchez-Lima, 161 F.3d at 547. The Court found that the statements "possessed guarantees of trustworthiness" because:

---

[1]   Although the Ninth Circuit opinion does not contain the details of the location and manner of the interviews, the facts are evident in the Appellee's briefing, attached as Exhibit D.

1    the declarants (1) were under oath and subject to the penalty of perjury; (2) made the
     statements voluntarily; (3) based the statements on facts within their own personal
2    knowledge; (4) did not contradict any of their previous statements to government agents
     and defense investigators; and (5) had their testimony preserved on videotape which
3    would allow the jurors an opportunity to view their demeanor.

4  Id.

5  In the present case, Defendant cannot meet her burden of showing that Sandoval-Perales's

6  statements meet this standard for trustworthiness. Although it is unlikely that Defendant can show that

7  any of these factors are met, the most glaring deficiencies of the statements at issue in the present case

8  are (1) the statements were not made subject to the penalty of perjury and (2) there are no previous

9  statements by these witnesses to government agents by which to gauge the trustworthiness and

10  consistency of the witnesses statements.

11  **1.  The Statements Were Not Made Subject to the Penalty of Perjury**

12  The videotaped statements solicited by Defendant lack the circumstantial guarantees of

13  trustworthiness required by Rule 807. Interviews taken without an oath have not been found to satisfy

14  the requirements. *See* United States v. Carreno, 363 F.3d 883, 889 (9th Cir. 2004) ("Sanchez was not

15  under oath when he gave the interview"), *vacated on other grounds by* Carreno v. U.S., 543 U.S. 1099

16  (2005).

17  Defendant's conclusory assertion that Sandoval-Perales's statements were "made under oath

18  and under penalty of perjury" is not supported by the governing law and facts of this case. Def. Memo

19  at 6. In order for an individual to be susceptible to prosecution for perjury, the person must have "taken

20  an oath before a competent tribunal, officer, or person, in any case in which a law of the United States

21  authorizes an oath to be administered . . ." 18 U.S.C. § 1621(1). Here, the video-taped statement was

22  taken in Mexicali, Baja California, outside of the United States. *See* Exh. B. Although Defendant's

23  attorney, Leila Morgan, purports to place her client's mother under oath before interviewing her,

24  Defendant has failed to show that Ms. Morgan is authorized by law as a competent officer to administer

25  such an oath.

26  On April 21, 2008, over two weeks <u>after</u> Sandoval-Perales gave her videotaped statement, she

27  apparently returned to the notary's office in Mexicali for the notary to "certify they ratify the contents

28  of" a translation and transcription of Sandoval-Perales's statement. Def. Exh. B at 16. It is unclear

whether an oath was administered as part of this "certification" or "ratification" process. Even if it was, it was apparently administered by the "notary" in Mexicali, Baja California, Mexico. That individual is not authorized by any law of the United States or any state within the United States to administer an oath that results in the statements being made under penalty of perjury.

The present case is distinguishable from Sanchez-Lima because in that case, the interviews of the witnesses took place at the U.S. Embassy in Mexico City, and therefore the interviews took place on U.S. soil. *See* Exh. D. The witnesses in Sanchez-Lima were all administered an oath in which they swore to tell the truth. 161 F.3d at 547. Moreover, the oaths were administered by a U.S. official, not a Mexican notary. The Sanchez-Lima court, therefore, could find that the statements made by the material witnesses were subject to the penalty of perjury. 161 F.3d at 547. Because the statement given by Sandoval-Perales was not under oath nor subject to penalty of perjury, it lacks the necessary guarantee of trustworthiness and is not admissible under Rule 807.

### 2. There Are No Previous Statements By the Witnesses To Gauge the Trustworthiness

In Sanchez-Lima, the witnesses giving the video-taped statements had previously been interviewed by government agents <u>and</u> had even testified before the Grand Jury. 161 F.3d at 547-48. The substance of their testimony, as well as their demeanor and other issues of credibility, had been captured and assessed on two previous occasions by the government. Significantly, the Ninth Circuit observed that "[t]he government had an opportunity to develop the testimony of these witnesses . . ." Id.

Here, in contrast, Sandoval-Rosales has never made any previous statements to the Government, let alone testified before the Grand Jury. The Government was never given an opportunity prior to the videotaped statement being taken to develop her testimony. Therefore, there are no prior statements available to compare to the video-taped statements in order to determine whether the video-recorded statements are trustworthy and reliable.

This falls far short of the standard articulated in Sanchez-Lima for guaranteeing that the statements are trustworthy. In Sanchez-Lima, as articulated above, the government had the opportunity to develop the testimony of the witnesses before their videotaped statements were taken. Id. Further,

the circumstances concerning the witnesses apprehension in Sanchez-Lima provided additional guarantees of trustworthiness that are absent in the present case. In Sanchez-Lima, the witnesses were all apprehended at the same time and in the same place as the defendant because they had been traveling as a group in entering the U.S. illegally. The Sanchez-Lima court could therefore find that the witnesses had personal knowledge of the events they testified about because the government could confirm that the material witnesses were, in fact, present at the scene of the altercation. Here, in contrast, Sandoval-Perales has not been verified to be a percipient witness. Defendant was the driver, sole occupant and registered owner of the vehicle that she drove into the United States with over 46 kilograms of marijuana. Her mother was not with her at the Port of Entry, nor was she in the vehicle with her daughter on the day of Defendant's arrest. There are no circumstantial guarantees that the statements were made by individuals qualified to testify as witnesses in the present case.

In the present case, the Court cannot even determine that the witness is who she claims to be on the video-tape. In Sanchez-Lima, the witnesses had all been apprehended in the United States by Border Patrol. Their identities were well-known, their photos and fingerprints had been taken, and their identities fully documented before they were deported. Sanchez-Lima, 161 F.3d at 546-48. There was sufficient indicia of reliability, therefore, that the individuals on the video-tapes were in fact who they purported to be. Here, in contrast, there is nothing on the videotape or otherwise to verify who the woman on the video-tape is, other than the witnesses unsworn statement that she is the mother of the Defendant. For all intents and purposes, the identity of the witness has not been established sufficiently to guarantee its trustworthiness. Because the statements are not trustworthy, they should not be admitted under Rule 807.

**3.      Defendant Failed to Exhaust Appropriate Avenues Prior to Seeking Video-taped Statements**

Defendant stated at the March 17, 2008, motion hearing that she need to parole witnesses into the United States to testify on her behalf. Defendant failed to make any arrangements to secure her witnesses' presence in the United States for trial, and instead filed a motion on March 28, 2008, requesting the court to authorize the taking of foreign depositions of the two witnesses under the framework articulated in Federal Rule of Criminal Procedure 15(a). Defendant did not wait, however,

for the Court to consider and rule on Defendant's motion. *See* Exh. A. Instead, anticipating perhaps that her request would be denied because she failed to meet the requirements of Rule 15, Defendant attempted to circumvent the carefully articulated procedures in Rule 15 governing foreign depositions and instead went to Mexico to conduct unauthorized "depositions." Id.

In Sanchez-Lima, part of the Ninth Circuit's rationale in finding that the videotaped statements should have been admitted under FRE 807 was that the district court had "previous[ly] deni[ed] [defendant's] motion to depose these witnesses" pursuant to Fed. R. Crim. Pro. 15(a). 161 F.3d at 548. Here, in contrast, Defendant did not wait for the Court's ruling regarding whether foreign depositions were appropriate and whether Defendant had met the standard. Defendant could have either (1) paroled in witnesses to testify in person at trial or (2) waited for appropriate court authorization to conduct foreign depositions according to the Rules of Criminal Procedure. Instead, Defendant is seeking the extraordinary accommodation of admitting under the residual hearsay rule statements that don't even come close to meeting the circumstantial guarantees of trustworthiness required by FRE 807. Defendant's attempts to make an end-run around the Federal Rules of Criminal Procedure should not be indulged, and Defendant should not be permitted to admit the videotaped statements into evidence.

**C.    Sandoval-Perales's Videotaped Statements Contain Inadmissible Double-Hearsay**

Even if this Court found that the videotaped statements of Sandoval-Perales have the circumstantial guarantees of trustworthiness required by Sanchez-Lima, the statements are still not admissible insofar as Sandoval-Perales's "testimony" concerns hearsay statements of her daughter. For example, Sandoval-Perales stated that her daughter (Defendant) told Sandoval-Perales that she was going to take her car to a friend's autobody shop. Def. Exh. A at 8. Even if Sandoval-Perales's videotaped interview met the Sanchez-Lima standard, her statements as to what her daughter said are still inadmissible hearsay if offered by Defendant herself.

Therefore, although nothing on the videotape should be admitted for the reasons articulated *supra* at III.B, if the Court chooses to admit some of Sandoval-Perales's statements, the Court must still exclude the double-hearsay statements of statements made by Defendant to her mother.

//

//

## IV
## **CONCLUSION**

For the foregoing reasons, the United States respectfully asks that the Court deny the motion to conduct the foreign deposition and deny the motion to admit the videotaped statement.

DATED: May 2, 2008

        Respectfully submitted,

        KAREN P. HEWITT
        United States Attorney

        s/ Rebecca Kanter

        REBECCA S. KANTER
        Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08CR0285-H |
| Plaintiff, ) | |
| v. ) | **CERTIFICATE OF SERVICE** |
| ESMERALDA SALAZAR-SANDOVAL, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED that:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO CONDUCT FOREIGN DEPOSITION OR ADMIT VIDEOTAPED STATEMENT on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Leila W. Morgan, Esq.
2. Reuben Cahn, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 2, 2008.

                                                                                                    s/ Rebecca Kanter
                                                                                                    REBECCA S. KANTER