1  **REUBEN CAMPER CAHN**
   California State Bar No. 255158
2  **LEILA W. MORGAN**
   California State Bar No. 232874
3  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
4  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
5
6  Attorneys for Ms. Salazar-Sandoval
7
8
                      UNITED STATES DISTRICT COURT
9
                   SOUTHERN DISTRICT OF CALIFORNIA
10
                   **(HONORABLE MARILYN L. HUFF)**
11
12  UNITED STATES OF AMERICA,        )      CASE NO. 08CR0285-MLH
                                     )
13        Plaintiff,                 )
                                     )
14        v.                         )      **REPLY TO GOVERNMENT'S**
                                     )      **RESPONSE TO DEFENDANT'S**
15                                   )      **MOTION TO AUTHORIZE A**
                                     )      **FOREIGN DEPOSITION OR ADMIT**
16  ESMERALDA SALAZAR-SANDOVAL,      )      **VIDEOTAPED STATEMENT**
                                     )
17        Defendant.                 )
                                     )
18  _____ )
19
    TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
20        REBECCA KANTER, ASSISTANT UNITED STATES ATTORNEY.
21                                  **I.**
22  **DEFENDANT HAS ESTABLISHED EXCEPTIONAL CIRCUMSTANCES**
       **WHICH JUSTIFY AN ORDER FOR A FOREIGN DEPOSITION**
23
          The Ninth Circuit's test for ordering a foreign deposition contains only two elements,
24
    first, that the prospective witness is unavailable, second, that the witness' testimony is
25
    exculpatory.  As the Ninth Circuit explained in *United States v. Sanchez Lima*, 161 F.3d 545
26
    (9th Cir. 1998):
27
          Ordinarily, exceptional circumstances exist when the prospective deponent is
28        unavailable for trial and the absence of the testimony would result in an

                                                            08CR0285-MLH

1    injustice.  This court has held that it is unjust to deprive a defendant of what
2    may be crucial exculpatory evidence.  *See People of the Territory of Guam v.*
     *Ngirangas*, 806 F.2d 895, 897 (9th Cir. 1986).

3    *Id.* at 548.  Despite the plain and understandable holding of the *Sanchez-Lima* court, the

4    government, in its response, proposes an eight part, multi-factored test.   Government

5    Response In Opposition To Defendant's Motion To Authorize   A Foreign Deposition

6    (hereinafter "Gov't Resp.") at 4-9.  No such test exists in the caselaw of this circuit.  As set

7    out in *Sanchez-Lima*, the authorization of a deposition is appropriate if two requirements are

8    met: (1) that the witness is unavailable for trial; and (2) that the witness may offer crucial

9    exculpatory evidence.

10       Ms. Salazar has met the test.  First, Ms. Sandoval is clearly unavailable.  She resides

11   in Mexico, beyond the subpoena power of the United States.  As explained in *United States*

12   *v. Ramos*, 45 F. 3d 1519 (11th Cir. 1995), this alone raises a presumption of unavailability:

13   "a substantial likelihood of unavailability can be found when the proposed deponent is

14   beyond the subpoena powers of the United States and has declared his unwillingness to

15   testify at trial, or even having declared willingness to testify cannot be subpoenaed if he

16   changes his mind." *Id.,* at 1523 (citing *United States v. Drogoul*, 1 F.3d 1546, 1553, 1557

17   (11th Cir. 1993)).  *See also United States v. Sanchez Lima*, 161 F.3d at 548 (witnesses were

18   unavailable where they had been deported to and resided in Mexico).  More important, Ms.

19   Sandoval is simply unable to travel to San Diego to testify at trial.  As set out in Defendant's

20   initial motion, Dolores Sandoval is extremely ill, suffering from a grave heart condition.

21       Against this clear showing of unavailability, the government offers objections which,

22   upon examination, amount to nothing more that its ability to obtain an immigration parole

23   for Ms. Sandoval.  That the government has the ability to parole into the United States a

24   witness who is willing *and* able to come here is irrelevant in evaluating the availability of a

25   witness who is:  (1) beyond the subpoena power of the United States; and (2) too ill to

26   survive the parole process and the trip to San Diego.  Neither the government nor the defense

27   can compel Ms. Sandoval's presence at trial.  Even were they able to do so, Ms. Sandoval

28   would be rendered unavailable by the rigors of the parole and trip and the effects of her

1  illness.  That is,  if anyone could get Ms. Sandoval to San Diego, she would be too ill to

2  testify.

3        Second, Ms. Sandoval's testimony is clearly exculpatory.  The thrust of that testimony

4  and how it supports Ms. Salazar's theory of the defense is fully described in defendant's

5  initial motion and is readily apparent from the transcript of Ms. Sandoval's videotaped

6  statement.

7        The government objects that the testimony is not exculpatory because Ms. Sandoval

8  states her belief that her daughter had owned the her car eight or nine months.  This may

9  conflict with the proposed testimony of the primary inspector who reports that Ms. Salazar

10 told him she had owned the car eighteen months.  Because of this conflict, the government

11 argues that the testimony is not favorable to the defendant.  It is difficult to know what to

12 make of the government's argument:  it seems to be arguing that if it can present evidence

13 that conflicts with defendant's evidence, the defendant's evidence cannot be favorable to her.

14 Of course, this is exactly what trials are about.  The government presents its evidence and the

15 defense attacks it.  The defense presents its evidence and the government attacks that.  The

16 jury determines the facts from these conflicting presentations.

17       Evidence does not become inadmissible because the government can present

18 conflicting evidence--or even what it considers a strong or overwhelming case for guilt.  The

19 jury alone judges the worth of any evidence.  The Supreme Court has made this clear again

20 and again, most recently in *Holmes v. South Carolina*, 547 U.S. 319, 324-27 (2006), that

21 rules of procedure cannot be used to arbitrarily exclude defense evidence.  In *Holmes*, the

22 Supreme Court invalidated a state court's rule that a defendant could not introduce evidence

23 of third party guilt if the state presented *overwhelming* forensic evidence of the defendant's

24 guilt.  *Id.* at 328-30.  Here, the government seeks to exclude defense evidence because it may

25 be able to present *some* evidence contradicting a small part thereof.  This is a weaker form

26 of the argument decisively rejected by the Supreme Court in *Holmes*.  As there, the issue is

27 for the jury, and the government remains free to argue the weight of the evidence to that jury.

28 *//*

08CR0285-MLH

Moreover, in making this argument, the government ignores the plain language of *Sanchez-Lima* which requires a showing that the evidence, *i.e*, the testimony, be exculpatory. There is no requirement that each and every sentence in the testimony directly exculpate the defendant. Indeed, the *Sanchez-Lima* court found the this requirement met where the witness' testimony "*could* have supported a self -defense theory based on Sanchez-Lima's reasonable mistake as to the agents' identity." *Id.*, 161 F. 3d at 548 (emphasis added). Frankly, it is hard to imagine testimony that could meet the standard the government seeks to apply.

The government also argues that Ms. Sandoval's testimony that her daughter spoke of: (1) her intent to take her car to a shop; (2) to pick up that car; and (3) to drive to the United States to pick up parts for the car is inadmissible hearsay. In making this argument, the government ignores Fed. R. Evid. P. 803(3) which provides that "[a] statement of the declarant's then existing state of mind . . . (such as intent, plan, motive, design . . .)" is admissible as a hearsay exception regardless of the availability of the declarant. The proffered testimony clearly falls within this exception to the hearsay rule. *See* Statement Of Facts And Memorandum Of Points And Authorities In Support Of Defendant's Motion (hereinafter "Defendant's P & A") at 4 ("Ms. Sandoval also offers testimony pursuant to Fed. R. Evid. 803(3) of Ms. Salazar's the existing intent and plan to drive to the United States if necessary to pick up parts necessary to complete her car's repair.").

## II.

### THE SWORN VIDEOTAPED STATEMENT OF DOLORES SANDOVAL IS ADMISSIBLE PURSUANT TO FED. R. EVID 807

As set out in Defendant's P & A at 5-6, the videotaped statement of Dolores Sandoval is admissible under, indeed is nearly identical in circumstances to that admitted in, *Sanchez-Lima*. The standard for admission of such a statement is set out in *United States v. Sanchez Lima*:

> Hearsay evidence sought to be admitted under Rule 807 must have circumstantial guarantees of trustworthiness equivalent to the listed exceptions to the hearsay rule. *See United States v. Fowlie*, 24 F.3d 1059, 1069 (9th

1
2
3

Cir.1994).  Furthermore, the statement must:  (1) be evidence of a material fact; (2) be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) serve the general purposes of the Rules of evidence and the interests of justice by its admission into evidence. Fed.R.Evid. 807.

4
5

*id.*, 161 F. 3d at 547.

6
7
8
9

Ignoring the actual holding of *Sanchez-Lima*, the government attempts to distinguish the case by arguing that certain facts present in *Sanchez-Lima* are absent here.  However, the factual distinctions on which the government relies are either non-existent or irrelevant to *Sanchez-Lima*'s holding.

10
11
12
13
14
15
16
17
18
19
20
21

For instance, the government complains that Ms. Sandoval's statements are not made under oath subject to penalty of perjury.  Factually, the government is wrong.  In her April 4, 2008 statement, Ms. Sandoval was informed that the statement might be used in her daughter's trial and was sworn to tell the truth.  Thus, the purpose of the oath, "to impress upon the swearing individual an appropriate sense of obligation to tell the truth" was accomplished.  *United States v. Buena-Vargas*, 383 F. 3d 1104, 1110 (9th Cir. 2004)("The purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth.")  Furthermore, on April 21, 2008, Ms. Sandoval was placed under oath by a Mexican notary public, Ramiro E. Duarte Quijada, authorized to administer oaths subjecting individuals to prosecution for perjury under Mexican law. Before him, Ms. Sandoval swore to the truth of her videotaped statement.  So, the April 4, 2004 statement was made under oath, subject to the penalties of perjury.

22
23
24
25
26
27
28

Moreover, the administration of an oath is not some independent requirement for admissibility under Rule 807.  Rather, the rule requires that statements offered thereunder have "equivalent circumstantial guarantees of trustworthiness" to statements admissible under Rules 803 and 804.  Of course, most types of statements admissible under those rules are not made under oath.  The oath is simply a factor considered by the *Sanchez-Lima* court that, together with others present, supplied those equivalent circumstantial guarantees. *Sanchez Lima,* 161 F. 3d at 547-48.

1    Similarly, the government complains that "[t]here are no previous statements by

2    which to gauge the trustworthiness [of Sandoval's statements]."  As a factual matter, the

3    government is wrong.  As set out in Defendant's P&A, on March 26, 2008, undersigned

4    counsel interviewed Ms. Sandoval in the presence of defense investigator, Lorena Garcia.

5    At that time, Ms. Sandoval made statements which led to counsel's decision to conduct the

6    April 4, videotaped interview.

7    In addition, the government's focus on the existence, *vel non*, of prior statements is

8    mistaken.  *Sanchez-Lima* does not consider the existence *per se* of prior statements as a

9    circumstantial guarantee of trustworthiness.  Rather, *Sanchez-Lima* finds the *lack of conflict*

10   between the offered and prior statements to be *one* circumstantial guarantee of

11   trustworthiness.  *Sanchez Lima,* 161 F. 3d at 547-48.  And, as noted in connection with the

12   government's fixation upon the particulars of the oath, the particular guarantees of

13   trustworthiness found in *Sanchez-Lima* are just that, i.e., particular guarantees of

14   trustworthiness existing in that case.  They are not threshold requirements for admissibility.

15   Finally, the government complains that "[d]efendant failed to exhaust appropriate

16   avenues prior to seeking videotaped statements."  Gov't Resp. at 11.  This is nonsense.  No

17   case or rule sets any avenues that must be exhausted prior to taking videotaped statements.

18   The government appears to argue that because Sanchez-Lima's Rule 15 motion had been

19   denied prior to taking of the statements in that case, Ms. Salazar was required to wait for

20   denial of her Rule 15 motion before taking Ms. Sandoval's statement.  Nothing in *Sanchez-*

21   *Lima* supports this reading of a restriction on the time at which a statement can be taken.  The

22   government misunderstands the relationship between the denial of the Rule 15 deposition and

23   the refusal to admit the Rule 807 statement.  Properly understood, the relation between the

24   Rule 807 statement and the Rule 15 deposition is that the denial of both in *Sanchez-Lima*

25   deprived the defendant of his Sixth Amendment right to present a defense.  *Sanchez-Lima*,

26   161 F.3d at 547.  Had the court either allowed a Rule 15 deposition or admitted the 807

27   statement, there would have been no reversible error.  This is *Sanchez-Lima*'s holding.

28   *//*

6                                    08CR0285-MLH

1       In fact, this case is governed squarely by *Sanchez Lima*. *Id.* at 547-48. Thus, if this

2   Court declines to authorize a deposition of Ms. Sandoval, it should admit into evidence her

3   videotaped sworn statement.

4   **III.**

5   **CONCLUSION**

6       WHEREFORE, Esmeralda Salazar Sandoval respectfully requests that this Court

7   authorize the deposition of Dolores Sandoval Perales or alternatively admit in evidence her

8   sworn videotaped statement.

9                            Respectfully submitted,

11  Dated: May 9, 2008             / Reuben Camper Cahn

12                             REUBEN CAMPER CAHN
                               LEILA W. MORGAN

13                             Federal Defenders of San Diego, Inc.
                               Attorneys for Ms. Salazar-Sandoval

1   **REUBEN CAMPER CAHN**
    California State Bar No. 255158
2   **LEILA W. MORGAN**
    California Bar No. 232874
3   FEDERAL DEFENDERS OF SAN DIEGO, INC.
    225 Broadway, Suite 900
4   San Diego, California  92101-5008
    Telephone:  (619) 234-8467
5   Facsimile: (619) 687-2666
    Leila_Morgan@fd.org
6

7
    Attorneys for Ms. Salazar-Sandoval
8

9
                        UNITED STATES DISTRICT COURT
10
                      SOUTHERN DISTRICT OF CALIFORNIA
11

12

13  UNITED STATES OF AMERICA,               )   Case No. 08CR0285-H
                                            )
14              Plaintiff,                  )
                                            )   **CERTIFICATE OF SERVICE**
15  v.                                      )
                                            )
16  **ESMERALDA SALAZAR-SANDOVAL**,         )
                                            )
17                                          )
                Defendant.                  )
18  _____ )

19

20          **I HEREBY CERTIFY** that on May 9, 2008, I electronically filed the foregoing document
21  with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being
    served this day on all counsel of record identified on the below Service List in the manner specified,
22  either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other
    authorized manner for those counsel or parties who are not authorized to receive electronically
23  Notices of Electronic Filing.

24                                    _____/s/___Reuben Camper Cahn_____
                                      **REUBEN CAMPER CAHN**
25                                    **LEILA W. MORGAN**
                                      Federal Defenders of San Diego, Inc.
26                                    225 Broadway, Suite 900
                                      San Diego, CA  92101
27                                    Telephone: (619) 234-8467
                                      Facsimile: (619) 687-2666
28                                    Leila_Morgan@fd.org
                                      Reuben_Cahn@fd.org
                                      Attorneys for Ms. Salazar-Sandoval

## SERVICE LIST

**United States v. Esmeralda Salazar-Sandoval**
**Case No. 08CR0285**
**United States District Court, Southern District of California**

**Rebecca Kanter**
Rebecca.Kanter@usdoj.gov

[Service via CM/ECF]