1                  UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF CALIFORNIA

3

4  UNITED STATES OF AMERICA,      ) Case No. 08CR0285-H
                                  )
5            Plaintiff,           ) San Diego, California
                                  )
6  vs.                            ) Monday,
                                  ) April 7, 2008
7  ESMERALDA SALAZAR-SANDOVAL,    ) 9:00 a.m.
                                  )
8            Defendant.           )
   _____)

9

10              TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE MARILYN L. HUFF
11               UNITED STATES MAGISTRATE JUDGE

12 APPEARANCES:

13 For the Defendant:           REBECCA KANTER, ESQ.
                                Assistant United States
14                                Attorney
                                880 Front Street
15                              San Diego, California 92101

16 For the Plaintiff:           FEDERAL DEFENDERS OF SAN DIEGO
                                BY: LEILA W. MORGAN, ESQ.
17                              RUBEN CAHN, ESQ.
                                225 Broadway, Suite 900
18                              San Diego, California 92101
                                (619) 234-8467
19

20 Transcript ordered by:       REBECCA KANTER, ESQ.

21 Transcriber:                 Leslie Kychik
                                Echo Reporting, Inc.
22                              6336 Greenwich Drive, Suite B
                                San Diego, California 92122
23                              (858) 453-7590

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

1

1    SAN DIEGO, CALIFORNIA  MONDAY, APRIL 7, 2008 9:00 A.M.

2                          --oOo--

3       (Call to order of the Court.)

4            THE CLERK:  Four on calendar 08CR285, USA versus

5    Esmeralda Salazar-Sandoval for motion hearing.

6            THE COURT:  Good morning.  Would you like to state

7    your appearances?

8            MR. CAHN:  Good morning, your Honor.  Leila Morgan

9    and Ruben Cahn on behalf of Ms. Salazar who is entering the

10   courtroom as we speak.

11           THE COURT:  Good morning.

12           MS. KANTER:  Good morning, your Honor.  Rebecca

13   Kanter for the United States.

14           THE COURT:  Good morning.  This is the time set

15   for motions in limine.  The court had received the

16   Government's trial brief and the Defendant's response in

17   opposition to the Government's motions in limine.  The court

18   also received a document Defendant's motion for an

19   authorization to conduct foreign depositions only on April

20   3rd.  Did the Government file a response to that?

21           MS. KANTER:  Yes, your Honor, the Government did.

22   I have a copy if the court needs it.

23           THE COURT:  Yes, I do.  And when was that filed?

24           MS. KANTER:  I filed it on Friday the same time as

25   I filed my response to the Defendant's motions in limine.

2

1          THE COURT:  Separately?

2          MS. KANTER:  Yes, I responded -- she filed the

3  motion and the motions in limine separately.  So I responded

4  separately, your Honor.

5          THE COURT:  All right.  Thank you.

6          MS. KANTER:  Your Honor, may I approach?

7          THE COURT:  You may.  I'll first address the

8  Defendant's motion in limine to exclude the evidence of

9  nervousness or physical observations.  The court's tentative

10 is to deny that but you may certainly object during the

11 course of trial.  If it becomes 403, then the court will

12 have the context of the testimony, and you can object.  But

13 under the case law -- I know you've cited some cases and

14 tried to distinguish them but the court believes that it's

15 appropriate.  You may make a contemporaneous objection and

16 the court will rule upon that.

17         On the motion to prohibit a copy of the indictment

18 to be submitted during deliberations it's not the court's

19 practice to submit the indictment into the jury room.  I

20 would ask that counsel to make sure that the jury

21 understands the nature of the charges against the Defendant.

22 The motion to exclude the marijuana from the courtroom.  Are

23 you intending to bring the marijuana here or not or do you

24 know?

25         MS. KANTER:  Your Honor, I believe the parties

3

1  agree to enter into a stipulation.  So assuming the

2  Defendant abides by the stipulation then it won't be

3  necessary.

4          THE COURT:  Is that correct?

5          MS. MORGAN:  We have agreed to the stipulation at

6  least as to the type of the drug.

7          THE COURT:  All right.  So you believe that that

8  renders the need for the marijuana here in the courtroom

9  moot?

10         MS. KANTER:  Yes, your Honor.

11         THE COURT:  So 14-4 is rendered moot.  On the

12 motion to exclude expert testimony, it's two pronged.  One

13 is on the value of the marijuana and another is as to

14 whether it's a distributable amount, and then additionally

15 there's a motion to exclude the street value.  Would you

16 like to be heard on that or submit?

17         MS. MORGAN:  We'll submit.

18         THE COURT:  All right.  So on the motion in limine

19 on the distributable amount, the court believes it's a

20 proper basis for expert testimony.  Again, you may certainly

21 object and then the court will have heard the expert's

22 qualifications, the context of the information and can make

23 an appropriate decision at the time of trial.  On the motion

24 to exclude the value, as I said it's two prong.  One was as

25 to the street value and I think what you can do it just

4

1   object at the time of trial.

2          MS. MORGAN:  Well, your Honor, I think

3   understanding that the issue is whether it's a distributable

4   amount of marijuana, I think the wholesale value is more

5   than sufficient given the court's inclination to allow that.

6   The street value is more prejudicial than probative because

7   there is no information that Ms. Salazar's involvement in

8   the offense rises to the street level or that value has

9   anything to do with what the charges are.

10          THE COURT:  Ms. Kanter?

11          MS. KANTER:  Thank you, your Honor.  I think that

12   the -- permitting the expert to testify to things the expert

13   are qualified, which would include the street value, is

14   perfectly appropriate in a case like this.  Simply giving

15   testimony about the wholesale value doesn't actually give an

16   accurate picture to the jury of what the value of the

17   marijuana is.

18          The value, of course, numerous cases have held and

19   numerous courts in this circuit maintain that the value is

20   probative of an individual's knowledge and because she has

21   been charged with possession with intent to distribute, I

22   think it's appropriate in light of that count to allow the

23   jury to hear the testimony from the expert about the whole

24   value of this, not just the wholesale level but also at the

25   street level.  Only of course here in Calexico the

5

1  Government would not seek to admit the street value either

2  in Mexico or elsewhere, simply in Calexico.

3        THE COURT:  You may make a contemporaneous

4  objection at the time and then the court will rule upon it.

5  I do believe that if it was just solely an importation case,

6  I think you'd have a better argument but given that there is

7  the count two, the court believes that it's not 403 and it's

8  not one that it's a huge amount of marijuana in any event.

9        I don't think that if the jury hears the wholesale

10 value and then if they're going to hear that it doubles or

11 whatever anyway when it crosses into the United States I

12 think you can make an objection and then the court will have

13 the context of the information at the time.  I don't think

14 that -- at least based on what I've read in the motions in

15 limine, I don't see that it's overly prejudicial.

16       On the motion to exclude rebuttal testimony, I'll

17 reserve ruling until after I hear the case which really

18 depends on what the nature of it is.  I don't usually permit

19 structure evidence to come in but it depends upon whether

20 there is something special where it becomes relevant and not

21 403.  So you should know it's probably -- I mean the court

22 generally doesn't allow the structure evidence to come in.

23 In any event, if you were going to illicit that, you would

24 have to approach side bar or alert the court in advance so

25 that we could clear that up ahead of time.

6

1            On the motion concerning 404(b) or 609 evidence,

2   the Government has said that you're not aware of any.

3            MS. KANTER:  We're not aware of any 609.  As to

4   404(b), the Government -- the only potential issue I think

5   between the parties is the TECS evidence.  The Government's

6   position is that that isn't 404(b) but insofar as it is, we

7   have actually noticed it in the event the court would

8   determine --

9            THE COURT:  So you turned it over to the --

10           MS. KANTER:  No, we've noticed that we would use

11   it in rebuttal if it becomes relevant but at this point the

12   Government has not turned it over because we do not have any

13   intention of utilizing it in our case in chief.

14           THE COURT:  What about that case?

15           MS. MORGAN:  Vega.

16           THE COURT:  Vega.

17           MS. KANTER:  Yes, your Honor.  I think this case

18   is very different from the Vega case.  The Vega case the

19   issue was not simply the TECS but also the bank statements.

20   There was the combination of the two.  The court in Vega

21   also held very clearly that the Government had not used it

22   properly in rebuttal.  What had happened in Vega the

23   defendant had testified about making certain bank deposits

24   and crossing the border on certain dates.

25           As it turned out, the TECS evidence and the bank

7

1 records that the Government submitted in rebuttal didn't
2 rebut that.  They actually supported it.  So the
3 Government's first finding in Vega was that that wasn't
4 really rebuttal evidence.  So I think in a case like this
5 where the Government really would only put it in to
6 contradict what the Defendant is saying, then that is more
7 squarely in the realm of rebuttal evidence.

8         In that case, it would not be necessary for the
9 Government to disclose its rebuttal evidence in advance.  I
10 think what is clear is that instead, Defendant is sort of
11 fishing for a way to make sure that the Government has
12 nothing to rebut on so that the testimony can be in accord
13 with it.  You know the Defendant's testimony about her prior
14 crossings, in the event she chooses to testify, is in accord
15 and consistent with her TECS evidence.  It wouldn't be
16 proper rebuttal and that's sort of what Vega was about.

17         MS. MORGAN:  I actually think the Government is
18 misreading Vega to some extent.  What Vega holds is that any
19 prior acts evidence, which TECS crossing are, should the
20 Government choose to use them, must be turned over whether
21 they are -- the case in Vega, the Ninth Circuit, clearly
22 held that TECS crossings are prior acts evidence under
23 404(b) and that those must be disclosed by the Government to
24 the defense.

25         THE COURT:  Well, they've told you what it is but

8

1  they're just -- so actually I think this is interesting.

2  What I'll do is grant in part and deny in part the motion in

3  limine.  The Government is precluded from using it absent

4  further order of the court.  They noticed that they might so

5  we'll see what happens.  Then I'll take a careful look at

6  <u>Vega</u> and if the court agrees with you, then it won't come

7  in.  If the court believes that there is some sort of

8  exception to <u>Vega</u> then we'll wait and see.

9            MS. MORGAN:  For the record, our position is that

10  the notice provided by the Government is wholly insufficient

11  where they state only that they have these prior crossings.

12  They intend to use them to show a litany of possibilities,

13  intent, preparation, plan, knowledge, intent.  They don't

14  specifically state their theory under which it's admissible

15  nor give us the evidence but that's not 404(b) notice.

16            Further, the Government has gone on to state in

17  their in limine motions that they only intend to use the

18  evidence under 607 which means they can cross examine on it

19  but they can't enter it in because at that point it's

20  extrinsic material used to prove up an impeachment on a

21  collateral matter.  So if that's what the Government chooses

22  to do that's fine but if they're going to try and actually

23  enter those records, I think the case law does say that they

24  need to turn them over.

25            THE COURT:  So what we'll do is reserve -- I'm

9

1    granting in part and denying in part reserving ruling until

2    later.

3            MS. MORGAN:  Additionally, we did make a specific

4    brady (phonetic) request for those records last week and

5    requesting them on the issue of whether Ms. Salazar-Sandoval

6    had previously been sent to secondary, whether that vehicle

7    had been previously sent to secondary.  The Government has

8    not responded to that request.  Inasmuch as the TECS record

9    show any of those things, we do believe they are brady and

10   should be turned over.

11           THE COURT:  If brady in that she was referred to

12   secondary and nothing was found?

13           MS. MORGAN:  Exactly.

14           THE COURT:  Ms. Kanter?

15           MS. KANTER:  Well, as a first matter, your Honor,

16   it would be irrelevant the Defendant was previously sent to

17   secondary and that nothing was found.  Individuals are

18   referred to secondary all the time.  Some times things are

19   found and some times they aren't.  So that would be for the

20   record.  For the court's information, I can say that there

21   is no evidence that either Defendant nor her vehicle has

22   ever been referred to secondary.  So I think that should

23   help alleviate Ms. Morgan's concerns.

24           THE COURT:  All right.  This may become an

25   interesting evidentiary issue but at a later point in time.

10

1  On the motion for attorney voir dire.  The court will
2  conduct the initial round of voir dire and then ask counsel
3  to approach and ask for any additional areas that you want
4  the court to inquire of, and I'll reserve ruling as to
5  whether you get any attorney voir dire later.
6         MR. CAHN:  Can I ask a question?  I've never been
7  in your courtroom.  Could you just explain how you do your
8  strikes?  I apologize but I've never --
9         THE COURT:  Arizona blind strike.
10        MR. CAHN:  Okay.
11        THE COURT:  So that after we do the initial
12 questioning, the questioning of how many ever we get, 31 or
13 32 typically.  The alternates are the last group.  So the
14 last usually four jurors in that group and I think given the
15 length of -- don't you think one alternate would be
16 sufficient here?  It's a two to three day case.
17        MS. MORGAN:  One alternate is perfect.
18        THE COURT:  All right.  So then after we do that
19 we pass out the sheets and you have your 10 strikes and
20 their six strikes simultaneously blind.
21        MR. CAHN:  Thank you, your Honor.
22        THE COURT:  And then if you waive any one of your
23 strikes, my court clerk asks you to write on that little
24 form that you are waiving your strike.  Then after we
25 approach side bar and I'll exchange the sheets so that you

11

1  can make any appropriate -- and challenges at that time.

2  Then the first unstruck jurors -- 12 are the jury plus then

3  the alternate from the last four jurors.  On the mug shot

4  photos, are you intending to use it?  That's moot?

5          MS. KANTER:  No, your Honor.  It's moot.

6          THE COURT:  All right.  On the poverty, this is

7  beyond poverty health education.  Cases are not tried in the

8  blind.  So if the Government thinks that the defense is

9  going far into irrelevant matters then make a

10  contemporaneous objection.

11          MS. KANTER:  Yes, your Honor.

12          THE COURT:  There's got to be some background that

13  comes out.  On the motion to allow the marijuana evidence

14  without establishing the chain of custody, the parties have

15  now agreed that it is marijuana?

16          MR. CAHN:  Yes, your Honor.

17          THE COURT:  So 17-1 is rendered moot.  On the

18  motion to exclude evidence of prior good acts related to if

19  there's any character testimony, make an objection at the

20  time.  On the motion to exclude witnesses except the case

21  agent, the court will grant that and also permit the defense

22  to have an equivalent investigator.  On the motion to

23  exclude potential punishment, in this case I think I grant

24  that.  I don't see that that would become relevant.

25          MR. CAHN:  I can't imagine it would be relevant

12

1  unless there's cross examination by the Government that

2  brings it up.

3          THE COURT:  On the general motion to preclude self

4  serving hearsay, make a contemporaneous objection at the

5  time of the trial.  The court denies it without prejudice.

6  On the motion to exclude any testimony of a defense expert,

7  you don't have one at present.

8          MS. MORGAN:  At this time we don't unless

9  something comes up that we need to rebut.

10          THE COURT:  If something comes up, then take that

11  up outside the presence of the jury.  On the motion to --

12  for reciprocal discovery, the court will grant that and

13  renew it and remind the parties of their obligations.  On

14  the motion to admit evidence of demeanor, obviously there

15  has to be a sufficient foundation but it's the flip side of

16  the defense's motion.  So if the Government is proffering

17  it, the defense may object and the court will rule upon it.

18          On the motion to admit the vehicle registration,

19  the court will permit it, assuming a proper foundation is

20  made.  The motion to admit the testimony of Government

21  experts, we've also ruled upon that.  Then we get to the --

22  I think we've covered them all except for the motion for the

23  foreign deposition.  The court's tentative is to decline

24  that.

25          MR. CAHN:  Well, judge, if I could address this.

13

1 The state of the matter has really changed from when our

2 motion was filed.

3           THE COURT:  A couple of days ago.

4           MR. CAHN:  Well, it was actually -- I was

5 surprised to hear your Honor say that you received it in

6 April.  We filed, and I'm not sure what's going on with the

7 clerk's office, but we filed it on March 28th when we filed

8 our motions in limine.  So I'm surprised you didn't get it

9 earlier.  We'll check and see if we can figure out what's

10 going on.

11          THE COURT:  What do you mean in the clerk's

12 office?  You guys filed it.

13          MR. CAHN:  Well, we filed it.  There's no question

14 we filed it.  We show our return that we filed it on the

15 28th and I'm not sure why it didn't get to the court

16 earlier.

17          THE COURT:  On your efile?

18          MR. CAHN:  Yes, your Honor.  We filed it the same

19 day we filed our motions in limine, your Honor.

20          MS. KANTER:  Your Honor, I can confirm that the

21 motion was filed -- I mean I would still argue that it was

22 late and we can get to that point later but it was filed the

23 same day the motions in limine.  The motion to conduct a

24 foreign deposition was filed I guess it was the 28th of

25 March.

14

1          THE COURT:  So then you filed another one?

2          MS. KANTER:  I think I know what the confusion is.

3  I think Ms. Morgan filed the notice of the motion last

4  Thursday but she filed her substantive argument regarding it

5  the Friday before.  I know that's when I received it.

6          MS. MORGAN:  That is correct.  That was a clerical

7  error on my part.  I filed the actual substantive motion

8  that I believed had a notice attached, and it came to my

9  attention last week that I had inadvertently failed to

10 attach the notice but I filed the papers.

11         THE COURT:  Okay.  Got it.

12         MS. MORGAN:  The actual substantive motion with

13 the argument was filed on the 28th.  I shouldn't file things

14 on my own.

15         THE COURT:  All right.  Mr. Cahn you're saying the

16 situation has changed?

17         MR. CAHN:  Yes, judge and let me try and put

18 everything that would bring you up to date first before I

19 discuss why we believe that this should be granted or in the

20 alternative that a video tape statement should be allowed.

21 First, we're withdrawing our motion as to the husband and so

22 I want to make that clear.  We're not offering his

23 testimony.

24         As to the mother's testimony, Ms. Sandoval, after

25 we interviewed her we came back, did some further research

15

1  on the law and in light of the case of <u>United States v.</u>

2  <u>Sanchez-Lima</u>, I'm sorry I need to put my glasses on, 161

3  F.3rd 545 and the court's tentative indication that it

4  wasn't going to set a hearing on the motion prior to

5  today --

6         THE COURT:  Not that.  I mean we set the

7  scheduling order set a briefing schedule for all motions.

8  We had discovery motions before so that this is the motion

9  date.  So I disagree on that.  You can't just run in and say

10 okay I'm in trial and then I want another -- we already set

11 a briefing schedule so that any motion would be due, so that

12 two weeks before the motion date so that the Government may

13 then have a week before to respond.

14        MR. CAHN:  Judge, that wasn't what I was saying.

15 All I was saying is that we knew we had a trial date set

16 tomorrow.  We knew we were going to be arguing motions

17 today.  We're trying not to delay the trial in any way.  In

18 light of <u>Sanchez-Lima</u>, and I'll lay out what it says, we

19 went to Mexico with a videographer, a court certified

20 interpreter.

21        We gave notice to the Government that we intended

22 to go, notice that we intended to take a video statement,

23 invited them along, invited them to cross examine the

24 witness, took a video tape sworn statement from the witness.

25 Immediately upon returning from Mexico, copied that

16

1  statement to a DVD which was turned over to the Government

2  on Friday evening as soon as we could make the transfer.  We

3  took the statement on Friday.  So the statement -- I would

4  like to enter a copy of this into the court's record as

5  Court Exhibit 1 to supplement the record as to the --

6          THE COURT:  It's too late.  I mean it's too late

7  now.

8          MR. CAHN:  Well, your Honor, I would --

9          THE COURT:  You can move for a continuance.

10          MR. CAHN:  Well, judge then we would move for a

11  continuance to allow us to take care of this matter.  This

12  is crucial exculpatory evidence that we've just come into

13  the possession of as of Friday.  This case has been set less

14  than three months after the arrest date.  Ms. Salazar should

15  not be deprived of crucial exculpatory evidence when there's

16  been diligence efforts to investigate to obtain the

17  statement to turn it over to the Government.

18          THE COURT:  It's the mom.

19          MR. CAHN:  It's the mom, yes.

20          THE COURT:  And so you're saying that the week

21  before trial you get statements of the mother?  I don't

22  think that that shows due diligence and obviously there's

23  broader ramifications beyond this case as to any other.

24  We've got a situation where the Government has a number of

25  cases that involve Mexican citizens, that the court has an

17

1  interest in making sure that the Defendants have relevant

2  information that comes to the court but at the same time if

3  somebody is not subjected to legitimate cross examination,

4  then you've got a <u>Crawford</u> issue and <u>Crawford</u> goes both

5  ways.  It goes not only for a fair trial for the defense but

6  also a fair trial for the Government.

7            So one we've got a time problem.  So that Ms.

8  Morgan didn't file her notice of motion but filed the motion

9  in a fashion that would comport with the court's schedule.

10 The defense can contemporaneously move for an objection and

11 then that would give the Government more time, but the

12 parties are ready for trial and the Defendant is in custody.

13 So the fact that the defenders can go to Mexico with a

14 videographer doesn't necessarily mean that there are

15 circumstances of trustworthiness.  Do you happen to have a

16 translation of the document for the court?

17            MR. CAHN:  Judge it's translated on the --

18            THE COURT:  No, you need a written translation.

19 Do you happen to have a written translation for the court?

20            MR. CAHN:  There is no written translation because

21 it's translated at the time.  The statement was taken as

22 though the witness were in court.  Simultaneous translation.

23            THE COURT:  Typically, if you're seeking to enter

24 something from -- we would get a transcript of what you're

25 seeking to enter rather than having the court watch a DVD.

18

1          MR. CAHN:  Well, judge, I'm happy to proffer

2    what's on it and I'd also ask the court to make this a part

3    of the record so if necessary the court of appeals can view

4    it.  We're happy to --

5          THE COURT:  They don't need to view it.  What I

6    need is the transcript.

7          MR. CAHN:  Well, we're happy but we --

8          THE COURT:  And typically that way if -- it's the

9    Defendant's -- so Mr. Cahn I understand.  You want the

10    mother to be able to testify about whatever the

11    circumstances were of her daughter's crossing.

12          MR. CAHN:  Yes.

13          THE COURT:  It's hard for the court to imagine

14    that a case that was indicted a while ago that wouldn't have

15    come to be known until the eve of trial.  So we've got a

16    practical problem and a substantive issue.  The substantive

17    issue is an interesting issue.  You've cited cases as to why

18    you think the court should permit it.

19          If I permit it in this case, then I permit it in a

20    whole lot of other cases.  So one is let's hear from the

21    Government first about they have -- I don't know if they've

22    now had a chance to see what's on the DVD or not.  I would

23    prefer to have a written transcript of it so that the court

24    can do it.  I read your authorities.

25          MR. CAHN:  Judge, if I can just make a couple of

19

1  points and then I'll sit down and allow the Government to

2  respond.  First, we're happy to try to prepare a written

3  transcript for the court.

4          THE COURT:  Sure.  Didn't you have a court

5  reporter?

6          MR. CAHN:  No, your Honor.  We didn't have a court

7  reporter.  We had a court certified interpreter and we had a

8  videographer to take the video.  We did not have a court

9  reporter.  We weren't able to arrange one on such short

10  notice.  Even for us getting in Mexico, finding witnesses,

11  taking statements is not necessarily an easy thing to do.

12          THE COURT:  And it's not easy for anybody.

13          MR. CAHN:  No.

14          THE COURT:  Not easy for the court certified

15  people.  It's not easy for the Government.  It's difficult.

16          MR. CAHN:  And the court is aware, as everybody in

17  the courtroom is, of the crush of cases that we're all under

18  at the moment.  And so --

19          THE COURT:  You weren't here in the -- you weren't

20  here in 2000.  In 2000, we had more cases.  We take seven

21  active judges then today.  So the crush of cases.  It's all

22  relative.  Each case deserves handling on its own.  So one

23  of the things is should we just then continue this one and

24  let it all sort out in a more orderly fashion or do we say

25  we know what the issue is and the issue is not going to

20

1  change whether we continue the case or not.

2          MR. CAHN:  And judge, let me make a couple

3  additional points with regard to what you've just said.  The

4  court raised the practical problem which is the Government

5  and their need to respond to this evidence.  In the normal

6  case, it's the defense preference to bring the witness to

7  the United States.  It's better for us to present that

8  witness before the jury.  The reason we can't do that here,

9  aside from the obvious reason that we can't force their

10 compliance, is the mother's health.  That's laid out more

11 clearly on this videotape that she's simply unable to

12 travel.

13         She has severe heart problems.  Her lungs begin to

14 fill with fluid when she's not taking her proper medication

15 or when she travels she faints.  She gets dizzy.  She

16 vomits.  So she's simply unable to travel.  This isn't a

17 situation unlike the husband where we felt we ought to be

18 able to get his appearance here and we're not, and so we're

19 not contesting that.  But this witness we simply can't get

20 here.  She's unable to go to the port of entry, wait in line

21 to get to the front to get her parole letter and then

22 transfer two plus hours from El Centro or Calexico to here.

23 So that differentiates this case from the typical case where

24 you have a witness who could be paroled into the country and

25 who could appear as a live witness.

21

1          The last thing I'd like to say is the court made a

2     point that Crawford allows the Government cross examination

3     as well.  I would respectfully disagree with the court on

4     that point.  The Government has a due process right to rebut

5     evidence and they have a due process right to have the

6     opportunity to cross examine.  But Crawford --

7          THE COURT:  So you see it's not really technically

8     Crawford.

9          MR. CAHN:  It's not a sixth amendment right.

10          THE COURT:  All right.  I agree.  It's not a sixth

11     amendment right but it's a due process right.

12          MR. CAHN:  I'd also just point out that Sanchez-

13     Lima deals specifically with that when it says cross

14     examination on the part of the Government isn't guaranteed

15     but rather the opportunity and that's why we made certain we

16     gave the Government notice Wednesday last before traveling

17     on Friday.  As soon as we --

18          THE COURT:  But that's way too short notice on

19     going to Mexico and then even here you've got -- so it's the

20     mother.  Is it really circumstances of trustworthiness?  I

21     had a case years ago where the Government -- it was the

22     defense.  It was a video statement of a general from Mexico

23     and the video statement was dynamite for one side and the

24     defense then said well, wait a minute.  You didn't see what

25     happened outside of the camera.

22

1              There were lots of things that were happening

2    outside of the camera and you really can't -- just simply

3    because it's now we're in the age of the Internet and the

4    age of video.  We say it's got to be true because she's

5    saying it.  Maybe there's another side to it.  Maybe the

6    Government is not expected then to go to a foreign country

7    and take a deposition.  In any event, I think it's an

8    interesting evidentiary issue as the parties have briefed

9    for the court.  Let me first hear from the Government and

10   then we'll see whether we continue the case, whether we rule

11   upon it or whether there's some other alternative.

12             MR. CAHN:  And judge I would just ask that this

13   DVD be entered into evidence at least for the record at the

14   appellate court if it becomes necessary because I think it

15   is a critical part of our proffer both in support of our

16   motion to admit the statement and our proffer in support of

17   the materiality of the deposition.

18             THE COURT:  One it's too late.  There was a

19   scheduling order that required you to do this ahead of time.

20   It is the Defendant's mother.  Her health condition did not

21   surface last week.  So the court respectfully declines to do

22   that, suggests that it would be much easier for the -- there

23   was no reason why this could not have been part of the

24   motion which is the scheduling order of the court.  That's

25   why we say we've got a practical problem and a substantive

23

1  problem.  On the practical side, do we continue it and then

2  let you do that and let the Government do their

3  investigation or make a phone call to the mother or do any

4  other alternatives.

5          MR. CAHN:  I understand the court doesn't -- this

6  court doesn't want to consider this.  While I disagree, I

7  accept this court's judgment on that matter but I --

8          THE COURT:  On a Monday?  The day before trial

9  when I happen to have -- take a look at the court's

10 calendar.  You mentioned the crush of business but I happen

11 to have on my calendar today 17 matters that have been

12 scheduled and noticed.  So by giving it to the court today,

13 you're really precluding the court from doing a meaningful

14 review unless we continue the trial.  So in any event, let

15 me first hear from the Government.  Maybe they don't object.

16         MS. KANTER:  Thank you, your Honor.  I think it's

17 important to separate two separate and distinct issues that

18 we have to deal with here.  The first is the Defendant's

19 motion from the 28th which is the motion to conduct foreign

20 deposition.  The Government has filed a written opposition

21 to that.  That should not be granted.

22         But separate and apart from that is the issue

23 regarding the statements that the Defendants went ahead and

24 took anyway.  So whether or not the court were to grant it

25 or deny it, there are statements.  They do exist and the

24

1    Government would move to exclude those statements from being

2    admitted into evidence.  So first I'll address the issue of

3    whether the court should grant the foreign deposition.

4             Obviously, this is a situation where I think the

5    Defendant first of all should have been able to do this in a

6    more timely fashion than it was done.  This shouldn't have

7    been filed as part of the motions in limine and one of the

8    factors --

9             THE COURT:  What about the short set of the case?

10            MS. KANTER:  Yes, your Honor and that certainly is

11   a factor.  However, at the motions hearing in this case on

12   March 17th, the Defendant apparently already anticipated

13   that this information was available because the Defendant

14   indicated to the court that they needed to parole in

15   witnesses and this court's response is you've got two and a

16   half weeks.  I guess you better do those letters right away.

17            So there was that expectation that both the

18   Defendant's mother and the Defendant's husband were

19   potentially witnesses in this case.  That was on March 17th

20   and this motion wasn't filed until March 28th.  During that

21   time, there was extensive back and forth between the parties

22   on am I going to parole them in?  The Government made very

23   clear they offered to parole in the witnesses and I

24   understand now the position that the Defendant's mother

25   can't be paroled in by virtue of her health condition but

25

1  that would be the next issue.

2          THE COURT:  Have you seen the Defendant's medical

3  records?  I mean the Defendant's mother's medical records.

4          MS. KANTER:  I have not seen her medical records

5  and those weren't filed.

6          THE COURT:  I have not seen any medical records

7  either.

8          MS. KANTER:  That's correct, your Honor and I

9  think the case law is very clear that in making a showing --

10         THE COURT:  I'm sure in the video it would become

11 clear that she is short of breath and otherwise but it would

12 be helpful to have a medical documentation of that beyond

13 the video that I'm given this morning.

14         MS. KANTER:  Not only helpful, your Honor, but the

15 standard for Rule 15 in order to make a showing of an

16 availability, the case law clearly requires an affidavit or

17 other comparable evidence to be submitted to the court.  On

18 the video, I can say I have watched it and yes, the

19 Defendant talks about the -- I'm sorry the witness talks

20 about her health condition.  It's still not an affidavit.

21 It wasn't under oath.  It wasn't submitted to this court in

22 any kind of sworn way.

23         So it still would be insufficient and that would

24 be the biggest point I want to focus on, your Honor.  The

25 first requirement for the deposition to be considered is

26

1   that the witness is unavailable to come here and testify in

2   court.  I understand the concerns about the Defendant's

3   mother's health but I think this court should also be aware

4   that the Defendant's mother actually went to the port of

5   entry to pick up the Defendant's stuff, her personal

6   belongings which were there.  So she was capable of making

7   that venture on February 5th to the port of entry.

8           THE COURT:  February 5th of this year?

9           MS. KANTER:  Yes, your Honor.  The Defendant was

10  arrested on January 21st and on February 5th, her mother and

11  her husband went to go get her things from the port of

12  entry.  So I find that the Defendant's mother is now unable

13  to come yet again at least to the port of entry for a

14  deposition -- I mean we still maintain that it would be most

15  appropriate for her to be expected to come to make that

16  extra two hour drive to testify at trial if that's what the

17  Defendant feels is necessary for exculpatory evidence.  But

18  at a minimum we know that she is capable of traveling to the

19  port of entry and that's certainly more appropriate then

20  doing a deposition in Mexico.

21          One of the other factors for determining whether a

22  foreign deposition should be granted under Rule 15 is the

23  harm and danger to the Government and Government agents and

24  anybody else who has to travel to the foreign country for

25  this deposition.  I think the court can sort of take

27

1  judicial notice of the issues that have been happening along

2  the border lately and I cited some in my papers, some news

3  articles of the recent violence especially in Mexicali which

4  is apparently according to news reports the fourth most

5  dangerous city in Mexico.

6          These aren't just anybody who would be traveling

7  to Mexicali.  These would be Government agents in a

8  narcotics trafficking investigation.  So I think that in

9  light of the ability of the Defendant's witness to come to

10 the port and the risk and difficulty in taking everybody

11 down to Mexico to interview her, as a first instance that

12 would be the most appropriate way to go about a deposition.

13 So that is my argument as to why the deposition just

14 shouldn't be granted in the first place.

15         We now have, as Mr. Cahn observed, a different

16 situation.  What we have it actually an interview that was

17 taken notwithstanding the fact that the court had not yet

18 ruled on the motion.  I submitted briefing which -- I have

19 briefing to submit to the court if the court is interested

20 addressing Sanchez-Lima and why Sanchez-Lima is completely

21 inapplicable in this case.  Now that this videotape

22 deposition exists --

23         THE COURT:  It's not a deposition.

24         MS. KANTER:  Thank you, your Honor, for correcting

25 me.  I agree.

28

1          THE COURT:  It's just a video statement.

2          MS. KANTER:  Video taped statement exists.  I

3   assume the Defendant would seek to admit it under Rule 807

4   which is the residual hearsay exception.  That's what

5   Sanchez-Lima is about is whether video tape statements can

6   come in under the residual hearsay exception.  In this case,

7   the test laid out by Sanchez-Lima is just wholly unmet.  The

8   first requirement for the Rule 807 to be satisfied is that

9   the statement was taken under oath and under penalty of

10  perjury.

11         There is no suggestion on this video tape, again

12  I've watched it, that the Defendant was read any kind of

13  oath or to have made the statement under penalty of perjury.

14  Even if she had it would have been in Mexico by a Mexican

15  notary which still wouldn't subject her to penalty of

16  perjury.  Sanchez-Lima was very different.  The witnesses in

17  that case went to the US Embassy in Mexico City, gave

18  testimony on what was the effectively U.S. soil and were

19  sworn in by a U.S. official.  There it might have been under

20  oath and under penalty of perjury.  That's just not the case

21  here.

22         The other critical difference between this case

23  and Sanchez-Lima is in Sanchez-Lima the witnesses who were

24  interviewed on the video tape were material witnesses that

25  had crossed into the United States illegally with the

29

1  Defendant.  That was an assault on a federal officer case.

2  Something like 18 people were rounded up together and those

3  individuals were witnesses to the alleged assault.  They

4  were interviewed by the Government.  They were taken in

5  front of the Grand Jury.

6         They were interviewed by the Defendant.  They were

7  finger printed, et cetera before they were deported.  These

8  witnesses were extensively vetted before those video tape

9  statements were taken at the U.S. Embassy.  Sanchez-Lima

10 specifically notes that is one of the factors, that the

11 Government had an opportunity to I believe the quote is

12 develop the statements of the witnesses prior to the video

13 tape being taken.  So it provided to the court

14 circumstantial guarantees of trustworthiness and that's

15 really the test here is whether there's any circumstantial

16 guarantee of trustworthiness.

17        Since it's not under oath and since the Government

18 never had the opportunity to develop this testimony prior to

19 the video tape statements, the court doesn't have the

20 circumstantial guarantee of trustworthiness that are

21 absolutely critical for admitting it under the residual

22 hearsay exception Rule 807.  Those are the primary arguments

23 the Government has.  Like I said I do have the briefing on

24 the Sanchez-Lima issue which I'd be happy to submit to the

25 court.  I don't believe that the opposition we filed to the

30

1 Rule 15 will sufficiently address all the issues that I

2 think the defense is now basing their arguments on for

3 admitting the statements.

4           THE COURT:  Mr. Cahn, this is what the court will

5 do.  I'm going to continue the trial so that you can file a

6 timely motion.  There's two motions.  One is for the foreign

7 depositions.  If the mother was well enough to go to the

8 port of entry in February, I have no medical records to

9 support that.  You can make your showing of medical

10 necessity that her situation is such that she's not going to

11 be able to improve.

12           MR. CAHN:  Judge, we don't know that the port is a

13 problem.

14           THE COURT:  Some times people do improve.  If she

15 was able to go to the port of entry in February, then it's

16 theoretically possible that she'll be able to be paroled in.

17 Secondly on the statement, at least at present the defense

18 does not have a sufficient basis for the admission, and then

19 I would reserve ruling on the residual exception to the

20 hearsay rule if you show unavailability and whether there's

21 circumstances of trustworthiness.

22           So one is from the court's point of view, I short

23 set this case giving Ms. Morgan two and a half, three weeks

24 to pull in witnesses which I thought if it can be done it

25 can be done.  I wouldn't want then the parties to say well

31

1  you made it so quick and then here we can't have a

2  legitimate thoughtful reasoned review of this matter.  Me

3  getting your video today really doesn't do me any good for a

4  trial set for tomorrow.  I mean I'm not going to be able to

5  watch it today.  So I don't see because we short set it, I

6  don't see any reason why we couldn't set both of these

7  motions for the foreign deposition and for the statement.

8         Then you can go get your translation because I

9  think that the court of appeals would prefer to see a

10 written transcription.  I mean they can also watch the DVD

11 too or maybe it turns out that the situation improves, she

12 gets better and she's able to come in.  So let me give you a

13 date for motion hearing at 2:00 o'clock with sufficient

14 time.  I need the Government to file a brief.  So what is

15 the --

16        THE CLERK:  May 12th.

17        THE COURT:  May 12th at 2:00 o'clock for the

18 motion for foreign deposition and the motion.  That will

19 give you a chance if that's available for the parties.  Mr.

20 Cahn?

21        MR. CAHN:  May 12th is fine.  I was just checking

22 to make sure I wasn't in Washington but I'm here.

23        THE COURT:  That is sandwiched in between my two

24 trips to Washington.

25        MR. CAHN:  Are you having to go back there too?

32

1          THE COURT:  Two times in two weeks.  It's a long

2    way there and a long way back but there's a lot of valuable

3    work that gets done there too.  So May 12th at 2:00 o'clock

4    and then the parties can submit briefs.  You can supplement

5    your brief.  I would like some medical records if

6    appropriate.  Make sure you give them to the Government with

7    sufficient time.  Then the Government can also file your

8    opposition to the second prong and supplement your first one

9    if you need to because we did it on such a short time frame.

10   Then I will vacate the current trial and the current motions

11   in limine.

12          Then it also may provide the mother a chance to

13   get better.  That way then the Defendant is not deprived of

14   anything.  The court finds that there is obviously

15   excludable time under the speedy trial act.  At least then

16   we take away some of the practical problems with what you

17   say is the crush of business and what I say is the busy

18   docket of the court, and then at least we can take a careful

19   and reasoned look at that rather than last minute.

20          MR. CAHN:  Judge, I don't know that the port of

21   entry as far as a location for the deposition is going to be

22   a problem.  So maybe that will solve the Government's

23   objection on the issues of both and other things.

24          THE COURT:  They can look at that.  They've got

25   broader issues if we start having depositions at the port of

33

1 entry.  Probably they don't want to set precedent but on the

2 other hand -- since I don't have the transcript to know what

3 the mother is going to say, the Government can evaluate it

4 on a case by case basis.

5          MR. CAHN:  For the purposes of this if I could

6 just ask a question about how the court would like the

7 transcript done.  As I said in the statement itself, there's

8 a court certified interpreter who is translating the

9 questions into Spanish and then translating the answers into

10 English.  We can either transcribe both or transcribe only

11 the English for purposes of the record.  Normally in court,

12 only the English would be transcribed.

13          THE COURT:  For this it would just be the English

14 and that way on the transcription -- well, it's usually the

15 video or tape that's the evidence not the transcription.

16 But then the Government can take a look if they have a

17 disagreement they do their own on that issue.

18          MR. CAHN:  Okay.  Then that's what we'll do and we

19 should be able to have that fairly quickly.

20          THE COURT:  Thank you.

21          MR. CAHN:  Thank you, your Honor.

22          MS. KANTER:  Thank you, your Honor.

23     (Proceedings concluded.)

24

25

34

1          I certify that the foregoing is a correct

2   transcript from the electronic sound recording of the

3   proceedings in the above-entitled matter.

4   s/Leslie Kychik           5/16/08
    Transcriber                Date
5
    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
6

7   s/L.L. Francisco
    L.L. Francisco, President
8   Echo Reporting, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25